SOULE, GUARDIAN, *v.* FIRST NATIONAL BANK OF FT. SMITH.

4-6328                                                    150 S. W. 2d 204

Opinion delivered April 28, 1941.

*Ira D. Oglesby,* for appellant.

*Daily & Woods,* for appellee.

SMITH, J. The chronology of the facts out of which this litigation arose is of controlling importance, and we, therefore, state them in their sequence.

On June 6, 1933, Mrs. Charlotte Welch, who, by a subsequent marriage became Mrs. Condrey, operated a monument business on a lot in the city of Fort Smith which she owned. On the date mentioned J. D. Firestone and his then partner purchased the personal property used in connection with this business, and took a lease on the lot for a period of two years. A "Bill of Sale and Contract" was executed, which recited a consideration of $2,120 as balance of purchase money. Certain payments were made, and on August 4, 1934, Mrs. Welch agreed to accept $1,500 cash in payment of the balance due on the purchase money.

Firestone and his partner borrowed that sum of money from the First National Bank of Fort Smith, and by way of security gave the bank a chattel mortgage on the property which they had purchased from Mrs. Welch, consisting of the machinery, equipment, tools, and furniture used in connection with finishing the monuments for sale, together with certain monuments, and grave markers, which constituted the stock of goods on hand for sale.

On August 14, 1934, Mrs. Welch indorsed on the bill of sale and contract its complete payment and satisfaction. The chattel mortgage was duly recorded, and Firestone subsequently purchased the interest of his partner and became the sole owner. At that time, Fire-

stone was not indebted to any party to this record except the bank.

The indebtedness due the bank was not paid in full, but was renewed on April 10, 1936, and the renewal chattel mortgage included certain personal property subsequently acquired. The debt to the bank had been reduced to $900 on August 3, 1937, when a renewal chattel mortgage was given. On September 26, 1938, a balance of $700 remained due, and the chattel mortgage was again renewed.

The indebtedness secured by this last renewal mortgage was not paid, and suit was filed to foreclose it, with *lis pendens* notice. A decree foreclosing the mortgage was rendered September 27, 1940.

Mrs. Welch died, and on September 14, 1936, Firestone purchased the lot from her executor. Prior to that time he had occupied the lot as a tenant. Firestone borrowed the money from the bank to pay for the lot, and to secure this separate loan executed a real estate mortgage to the bank on the lot. On September 23, 1938, Firestone borrowed from Mrs. Irene Soule the amount of money due on the lot and secured by the mortgage thereon, and gave Mrs. Soule another mortgage covering the lot in substitution for the mortgage on the lot given the bank.

As has been said, the decree foreclosing the chattel mortgage given the bank was rendered September 27, 1940, and pursuant to its directions the commissioner appointed to make the sale had taken possession of the mortgaged property and had advertised it for sale.

On January 23, 1940, C. P. Ahlgren, receiver, recovered judgment in the municipal court of Fort Smith against Firestone for $96.10, on which a payment of $50 was made, leaving a balance due of $46.10. On February 13, 1940, W. C. Townsend & Company recovered judgment in the municipal court of Fort Smith against Firestone for $84.31, on which a payment of $30 was made, leaving a balance of $54.31.

After the rendition of the decree in the foreclosure proceeding, Mrs. Soule intervened in that proceeding

and filed a motion to modify said decree and order of sale, in which motion she alleged that Firestone had, on September 23, 1938, executed to her a mortgage on the lot and "all appurtenances thereto belonging," and that she had instituted foreclosure proceedings on June 19, 1940. In this motion it was alleged that so much of the machinery on the lot as was covered by the chattel mortgage was a part of the realty, and it was prayed that such machinery be excluded from the decree of sale.

The chattel mortgage to the bank also covered what might be called the stock of goods, consisting of monuments, grave markers, etc. The intervening judgment creditors insist that the chattel mortgage upon the stock of goods was void.

Upon hearing these motions and interventions, they were dismissed as being without equity, and this appeal is from that decree.

The machinery first purchased from Mrs. Welch was located in that part of the building which had a dirt floor, and the pieces of machinery were set on individual concrete bases, which might have been removed without damage to the building; but we think, nevertheless, that they were fixtures in 1934, when the bill of sale and contract was executed. But we also think that the effect of that instrument was to destroy their character as fixures. They were sold separate and apart from the building in which they were stationed, and this, in legal effect, was a severance, which invested them with the character of personalty.

Our case of *Hensley* v. *Brodie,* 16 Ark. 511, is cited, among other cases to support the following statement of law appearing as § 70 of the chapter on Fixtures in 26 C. J. 692: "By the weight of authority, a separate sale or mortgage of articles previously annexed to the land has the effect of rendering them personalty, although in no way physically severed." A similar statement of the law, with citation of cases supporting it, appears in vol. 22, Am. Jur., p. 727, and also at § 10 of the chapter on Fixtures in 11 R. C. L., p. 1066.

Here, the owner of the lot and the fixtures sold the fixtures apart from the lot. This was a constructive

severance, which made what had been fixtures personalty. To secure the repayment of the money borrowed to pay for them, a chattel mortgage was executed to the bank which had loaned the purchase money, and this chattel mortgage, by renewals thereof, duly recorded, has been kept in force and effect.

When Firestone purchased the lot he gave a mortgage upon it to secure the repayment to the bank of the additional loan made to pay for the lot. Mrs. Soule loaned Firestone the money to repay the bank, and by the new mortgage which she then took from Firestone she acquired the same security which the bank had, that is, a mortgage on the lot which did not include the fixtures, because, as herein stated, they had been previously constructively severed, and we think the court properly dismissed her intervention. She may, of course, proceed with her suit to foreclose this mortgage.

We are of the opinion also that the court properly dismissed the interventions and motions of the judgment creditors, whose insistence is that the chattel mortgage to the bank was void insofar as it covered and related to the stock of merchandise on hand, consisting of monuments, grave markers, etc.

Appellants designate the chattel mortgage as a running mortgage on the stock of merchandise, from which stock of merchandise goods were sold and the stock replenished as the sales were made.

To support the contention that the mortgage was void, we are cited to *Lund* v. *Fletcher,* 39 Ark. 325, 43 Am. Rep. 270, in which case it was said that a fluctuating lien, which opened to release what was sold, and to take in what was purchased, is invalid in law.

But this is not true as between mortgagor and mortgagee, the mortgage being valid as between them; nor is it true as to a third party where the mortgagee takes possession of the mortgaged property before the third party has questioned the validity of the mortgage or has fixed some lien upon it.

This is made very clear by the opinion in the case of *Little* v. *National Bank of Mena,* 97 Ark. 57, 133 S. W.

166, in which case Justice HART quotes from and approves the holding in *Lund* v. *Fletcher, supra,* and cites other cases to the same effect.

In this Little case, *supra,* the lumber company executed a mortgage on its stock of lumber on hand and all other lumber thereafter acquired during the life of the mortgage. The lumber company continued in possession of the lumber, selling and replenishing the stock in the usual course of business, until default was made in the payment of the debt secured by the mortgage, when the mortgagee took possession of the mortgaged lumber. A receiver was appointed at the suit of other creditors of the lumber company who took over all the assets of the lumber company, including the lumber. The bank intervened in that suit, and asserted the validity of its mortgage which was denied by the other creditors upon the ground that it covered an open stock of goods. The trial court sustained the validity of the mortgage, from which decree the creditors appealed to this court. In affirming this decree it was there said: "Constructive fraud is relied upon, arising from the fact that by the terms of the mortgage the mortgagor was allowed to sell the lumber in due course of trade on his own account, and not as agent of the mortgagee. There are two lines of decisions upon this question—one holding that the mortgage is absolutely void, and that no subsequent act of the parties can impart any validity to it, and the other holding that the mortgage is valid between the parties, but invalid as to subsequent purchasers, attaching or execution creditors or others acquiring specific liens upon the property. See case notes to 25 L. R. A. (N. S.), pp. 110 and 145, and 17 L. R. A. (N. S.), p. 937. In the case of *Lund* v. *Fletcher, supra,* our court held that in such case the mortgage 'was invalid, save between the parties, on account of the power left in the mortgagor to sell in ordinary course of business.' It necessarily follows that, if the mortgage is valid between the parties, it constitutes a lien upon the property against every person except subsequent purchasers and creditors acquiring a specific lien upon the property; and such is the effect of the decision in the case of *Lund* v. *Fletcher,*

*supra,* and other similar cases in this state. This view is strengthened by the decisions of our court, which held that if a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches his title under the mortgage is good against everybody, if it was previously valid between the parties, although it be not acknowledged or recorded. *Garner* v. *Wright,* 52 Ark. 385, 12 S. W. 785, 6 L. R. A. 715; *Applewhite* v. *Harrell Mill Co.,* 49 Ark. 279, 5 S. W. 292; *Martin* v. *Ogden,* 41 Ark. 186."

Here, a foreclosure of the chattel mortgage had been decreed and the property advertised for sale before the judgment creditors attempted to impose a lien under their judgments on the personal property by levying an execution thereon. The Little case, *supra,* is, therefore, authority for holding that the chattel mortgage is valid as to these judgment creditors.

As to the real estate mortgage, it appears, from what has been said, that it did not cover the fixtures, which had previously been severed and had become personalty.

Among the cases cited by appellants the one which appears chiefly to be relied upon is that of *Coffman* v. *Citizens Loan & Investment Co.,* 172 Ark. 889, 290 S. W. 961. There an automobile dealer gave a mortgage on a stock of cars which were kept for indiscriminate sale to the public. The mortgagee filed suit against the receiver for the dealer, who claimed possession of the cars under title-retaining notes given the dealer by purchasers who bought cars before the mortgagee took possession of them under its mortgage. In other words, the rights of subsequent purchasers had accrued before possession was taken of the cars by the mortgagee. The receiver stood, as against the mortgagee, in the shoes of the purchasers, and the receiver's right of possession was sustained.

But, here, it may again be said, the chattel mortgagee had taken possession of the personalty before the rights of any subsequent purchaser or lienholder accrued.

A late case, sustaining the views here expressed, which cites a number of other cases to the same effect, is that of *Wasson* v. *Beekman,* 188 Ark. 895, 68 S. W. 2d 93.

The decree is correct, and is, therefore, affirmed.