UNIVERSAL C.I.T. CREDIT *v.* EVANS CORP.

5-2445                                            350 S. W. 2d 606

Opinion delivered November 6, 1961.

*Wright, Lindsey, Jennings, Lester & Shults* and *Philip S. Anderson, Jr.,* for appellant.

*Cole & Scott,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a Chancery Court's award of a sum of money interpleaded by an intervenor in a chattel mortgage foreclosure action.

In March of 1955, appellee J. M. Evans sold to E. K. Weise and James Westbrook his business known as Saline County Motors. To enable Weise and Westbrook to make this purchase, appellees J. M. Evans and Ivy G. Evans, his wife, permitted Weise and Westbrook to execute a chattel mortgage on the property sold. The mortgage covered "all parts and accessories, all office furniture and fixtures, all accounts receivable and all notes receivable, all other appurtenances now on hand, all used automobiles, all used trucks or rolling stock, all used farm machinery, and new farm machinery." Attached to and mentioned in the mortgage was a list of some of the property that it was intended the mortgage should

cover. The mortgage also provided "that the mortgagors shall have the right to collect said notes and accounts and sell of the above described property and any hereafter acquired property in the *usual retail trade* and that any such property hereafter acquired shall also be covered by this mortgage and also notes and accounts receivable or renewals thereof shall also be covered by this mortgage with the right to sell and collect the same as above stated," (*i.e. usual retail trade*).

On June 1, 1960, Weise and Westbrook had become heavily indebted to appellant, Universal C. I. T. Credit Corporation. In order to recover this deficit, Weise and Westbrook executed to Universal C. I. T. Credit Corporation an assignment of factory credits due or to become due them from International Harvester Company. This assignment was made without any discussion as to the amount of credits due Weise and Westbrook from International Harvester. At the time the assignment was made, International did not owe Weise and Westbrook the fund in question in this appeal. The assignment included "all credits which are now or may hereafter become due to the undersigned (Weise and Westbrook) from International Harvester Company any of its subsidiaries or affiliates in connection with undersigned's acquisition of new cars, parts and accessories . . ."

On August 10, 1960, Weise and Westbrook sent appellee J. M. Evans the key to the business building along with a letter telling him that all his mortgaged parts, accessories, office equipment and fixtures were in the building.

On August 12, 1960, appellees, J. M. Evans and Ivy G. Evans filed a complaint for foreclosure in the Chancery Court of Saline County, Arkansas, seeking to foreclose on the mortgage executed to them by Weise and Westbrook in 1955 and have a receiver appointed to inventory and preserve the assets covered by the mortgage.

On or about August 17, 1960, International Harvester Company, after negotiating with Weise and West-

brook (mortgagors), bought from them certain automobile and truck parts for which it agreed to pay the sum of $4,789.20. The money from this sale is the money involved in this appeal.

On August 18, 1960, a hearing was held in the Saline County Chancery Court at which time a receiver was appointed to inventory and take charge of and preserve the assets covered by appellees' mortgage.

On August 22, 1960, the receiver made demand upon International Harvester Company for payment of the $4,789.20 owing for the parts it had bought.

On September 23, 1960, International Harvester Company filed its intervention and Bill of Interpleader in the Saline Chancery Court paying into the registry of the court the $4,789.20 due on the parts. Both appellant and appellees filed an Answer to the Intervention claiming the money in question—appellees' by reason of their mortgage, and appellant's by reason of its assignment.

On November 21, 1960, a hearing was held in the Saline Chancery Court on the Intervention and Bill of Interpleader at which time the court found that the money owed by International Harvester and deposited into the registry of the court should be paid to appellees (or the receiver) as the same was covered by their mortgage and not covered by appellant's assignment.

From this final order, Universal C. I. T. has appealed.

For reversal, three points are urged. Appellant's first point contends that the mortgage from Weise and Westbrook to appellees violated the Bulk Sales Act (Ark. Stats. § 68-1501, 1957 Repl.).

Appellant did not offer to prove that the Bulk Sales Act was not complied with. Since this is a case of first impression in this State relative to the burden of proof under the Bulk Sales Act, we agree with and adopt as our own the general rule as set out in 37 C. J. S. Fraudulent Conveyances § 498, as follows:

"The burden of proof is on one who seeks to set aside a sale of merchandise as in violation of the bulk sales statute to bring himself and the transaction strictly within its provisions. Thus, he must show that at the time of the transfer he was an existing creditor and entitled to a compliance with the provisions of the statute." (Also see *Singletary* v. *Morris Candy Co.*, 129 Ky. 556, 112 S. W. 637, and *Whittington* v. *Yazoo Delta Mortgage Co.*, 148 Miss. 861, 114 So. 752.)

Appellant's second and third points urged for reversal are so interwoven they will be discussed together. They contend that: The Chattel Mortgage in favor of appellees does not extend to factory credits; and, that the mortgage is a fluctuating mortgage on a stock of goods and as such it is void as to appellant.

"Fluctuating" or "open-end" mortgages have long been held to be valid as between the parties. *Lund* v. *Fletcher*, 39 Ark. 325 (1882); *Soule* v. *First National Bank of Ft. Smith*, 202 Ark. 326, 150 S. W. 2d 204. Of course the thing that makes them void as to third parties is the authority given to the mortgagor to sell the property, *Coffman* v. *Citizens' Loan and Investment Co.*, 172 Ark. 889, 290 S. W. 961. This appears to be a logical rule. It permits one wishing to buy mortgaged property in the *usual course of trade* to look at the mortgage and see that the mortgagor has the right to sell it under the mortgage. Such a third party as this is certainly entitled to such a protection. But this is not the situation of the case at bar. Here we have a mortgage given on the property with the mortgagor having the right to sell this property in the *usual retail trade*. If International had bought in the *usual retail trade* and if appellant had received its assignment in the *usual retail trade*, then appellant would be entitled to the protection intended by the rule against fluctuating mortgages. However, Universal C. I. T. Credit Corporation is not in this position.

As we view the matter, Universal C. I. T. took this assignment, which came into being through a wholesale

transaction, to secure a pre-existing account in the course of its business of lending money and not in the course of *retail trade* of Saline County Motors. This being true, we have no choice but to agree with the learned Chancellor that the funds here in question were covered by appellees' mortgage and were properly awarded to him.

Affirmed.