STEPHENS *v.* AAA LUMBER CO.

5-3400                                      384 S. W. 2d 943

Opinion delivered December 21, 1964.

*C. R. Starbird,* for appellant.

*Batchelor & Batchelor,* for appellee.

PAUL WARD, Associate Justice. Appellee, The AAA
Lumber Company, is a corporation engaged in the retail
sale of building supplies. On September 9, 1963 appellee
filed a complaint (later amended) against D. L. and Gina
Lunsford (husband and wife) alleging they were in-
debted to it in the sum of $1,670.31 for building mater-
ials purchased and used in constructing a house on 20
acres of land owned by Odis and Eula Stephens who are
the parents of Gina, and who were later made parties de-
fendants. It was further alleged that the Lunsfords were
non-residents and owned no property here except the said
building; and that Mr. and Mrs. Stephens were estopped
to deny the Lunsfords owned the said building. Appellee
prayed for judgment against the Lunsfords for the
amount stated above, that the building be subjected to
attachment, that it be removed from the land and sold
(if necessary), and that the proceeds be applied on the
judgment. No question is raised as to the procedure for
attachment.

Judgment was rendered against the Lunsfords as prayed and they have not appealed.

Mr. and Mrs. Stephens (appellants here) filed an answer to the above complaint, admitting they owned the land, that they helped the Lunsfords build the house, and that appellee furnished the building materials. They alleged the house became a part of the realty. They denied that the Lunsfords were non-residents or that there was any agreement for the Lunsfords to have title to the house. They prayed that the complaint and the attachment be dismissed or, if the attachment be sustained, that their interest be prior to that of appellee.

After testimony was introduced by both sides, appellants offered seven instructions which were refused by the court without objection. Then the issues were submitted to the jury on three general instructions along with the following interrogatory:

"Do you find from a preponderance of the evidence in this case that the defendants, Odis Stephens and Eula Stephens, stood by, observed the buying of lumber from the AAA Lumber Company, and the using of the lumber in the house in question and participated in the picking up and hauling items from said company to the building site and actually helped in the building of the house without making protest or advising the plaintiff that said land belonged to them and that they claimed said house?" To the above interrogatory the jury's answer was "Yes". The only objection and exception to the above procedure was the following:

"The defendants object to the submission by the Court to the Jury the question of estoppel in this case for the purpose of holding defendants, Odis Stephens and Eula Stephens, liable for the debts of D. L. Lunsford and Gina Lunsford.

"THE COURT: This is overruled."

The obvious answer to the above objection was stated at the time by the trial court when it said: "The court never thought of holding them (appellants) personally liable."

Likewise, appellee does not here seek to hold appellants personally liable.

Appellants urge two additional points for a reversal, but we find no reversible error in either.

*One.* Appellants' argument is to the effect that the house when built became a part of the realty and therefore could not be detached and sold. Ordinarily this is true, but there are recognized exceptions. See: *Soule, Guardian* v. *First National Bank of Ft. Smith,* 202 Ark. 326, 150 S.W. 2d 204, and *Hankins* v. *Luebker,* 224 Ark. 425, 274 S.W. 2d 356. In the first case this point arose where machinery was attached to and was a part of the realty in 1934, but where later it was disposed of, and we said: "They were sold separate and apart from the building in which they were stationed, and this, in legal effect, was a severance, which invested them with the character of personality." In the other cited case this Court was dealing with pumping units installed in a rice field which concededly was ordinarily a part of the realty. This Court there said:

"It is well settled by our own cases and the authorities generally that parties may treat as personal property machinery or improvements which would otherwise be a part of the realty, and, thus convert it into personal property as between themselves."

Here the record is replete with testimony to show, and to support the finding, that appellants, by their actions, led appellee into thinking the Lunsfords were buying building materials to build their own house and not a house for appellants. Mr. Stephens even admitted that he was paid by the Lunsfords for helping them build the house and that appellee furnished the material. Therefore we think the trial court was right in holding, without objection, appellants were estopped from now claiming the house was a part of the realty and that it belonged to them.

*Two.* We find no merit in appellants' contention that the Lunsfords were not non-residents and that,

therefore, there was no legal basis for service by attachment. The pertinent part of the attachment statute, Ark. Stat. Ann. § 31-101 (Repl. 1962) reads as follows:

"The plaintiff in a civil action may, at or after the commencement thereof, have an attachment against the property of the defendant, in the cases and upon the grounds hereinafter stated, as a security for the satisfaction of such judgment as may be recovered.

"First. In an action for the recovery of money, where the action is against—

1. A defendant, or several defendants who, or some one of whom, is a foreign corporation, or nonresident of the State . . ."

The pivotal word, as here connected, in the above section is "non-resident". The question here therefore is not whether the Lunsfords were domiciliaries of this state but whether they were non-residents. This Court has consistently held that the words "domicile" and "residence" are not synonymous. If the Lunsfords were non-residents at the time this suit was filed, then the attachments must be sustained. See: *Krone* v. *Cooper*, 43 Ark. 547, where we said:

"Thus, where a mother left the state of her domicile and accompanied her children into another state, with the intention, however, of returning when their education was completed, she was held liable to the process of attachment in the state of her domicile, as being a non-resident of that state. *Alston* v. *Newcomer*, 42 Miss. 186."

Here it is not disputed that the Lunsfords were not residing in this state though there is some intimation they might someday make this state their domicile. It is not denied that they moved to Dallas in August 1963, and that Mr. Lunsford is now employed in California.

In addition to the above it is conceded that Mrs. Lunsford was present at the trial and that she also testified in the case. By so doing she entered her appearance. *Nichols* v. *Arkansas Trust Company*, 207 Ark. 174,

179 S.W. 2d 857; *Prosser* v. *Ark. Baptist Hospital,* 237 Ark. 157, 372 S.W. 2d 395.

Affirmed.

GEORGE ROSE SMITH and ROBINSON, JJ. dissent.

GEORGE ROSE SMITH, J., (dissenting). It should be made clear at the outset that this case does not involve a materialman's lien. Lee Edwards, the appellee's president and general manager, testified that he refrained from filing a lien because Lunsford asked him not to do so, saying that it would "foul Mr. Stephens up." Thus the lumber company, with notice that the Lunsfords did not own the land, allowed its remedy against the improvement itself to lapse.

The majority opinion nevertheless creates, on the theory of estoppel, what is in substance a materialman's lien. Reliance by the adverse party is an essential element in an equitable estoppel. If the complaining party had no knowledge of the conduct that is said to give rise to an estoppel there could have been no reliance and therefore no estoppel. *Miller Lbr. Co.* v. *Wilson,* 56 Ark. 380, 19 S.W. 974.

There is no substantial evidence to show that any action on the part of Mr. and Mrs. Stephens misled the appellee either into giving up its lien or into believing that the house was to become the Lunsfords' separate personal property. Edwards, the head of the lumber company, testified that on about three occasions Stephens picked up small items, such as nails, that D. L. Lunsford had ordered. Stephens said at the time that the material was going into the house being built for Lunsford. It may also be true, though this is not clear, that it was known to the lumber company that Stephens was assisting his son-in-law in building the house.

These facts fall decidedly short of creating an estoppel. Under our decision in *Gunter* v. *Ludlam*, 155 Ark. 201, 244 S.W. 348, and similar cases, one who stands by and permits another to construct a building on his land is not estopped to assert his ownership as against a materialman's lien. Here the same principle applies to the improvement as well, for the appellee failed to perfect its lien.

Most of the appellee's argument relates to transactions between the Stephenses and the Lunsfords. Stephens testified that he intended for the house to be a home for his daughter and her husband. He kept track of his own contributions of labor and material so that he could take them into account later on in making a fair division of his property among his three children. The proof does not suggest that Mr. and Mrs. Stephens were under an enforceable duty to convey the house and lot to the Lunsfords.

What happened between the Stephenses and the Lunsfords is immaterial as far as the appellee's reliance is concerned, for no one at the lumber company knew anything about these matters. If, however, there had been a binding agreement between the Stephenses and the Lunsfords that the house was to become the latters' severable personal property, then it might be said that the appellee could claim subrogation to the Lunsfords' rights. The short answer to such a suggestion is that no such agreement was established. Mr. and Mrs. Stephens and their daughter all testified, but none of them intimated that the dwelling was to become personal property. Any such suggestion is in fact wholly unreasonable. An agreement that an improvement is to remain personal property means that its owner intends to have the power to remove it from the land. Otherwise the agreement could have no purpose. This house was built upon a concrete foundation and could not have been moved without its being damaged. There was obviously no thought in the minds of any of the parties that the house would ever be moved. The jury did not find, and

848

on the proof could not have found, that the dwelling was personal property. The judgment should be reversed.

ROBINSON, J., joins in this dissent.