**COMMERCIAL CREDIT CORPORATION,**
Appellant,

v.

**A. BLAU, d/b/a Brush Creek Motors,**
Respondent.

No. 50963.

Supreme Court of Missouri,

Division No. 2.

July 12, 1965.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Sept. 13, 1965.

Charles F. Lamkin, Jr., James B. Lowe, Kansas City, Kuraner, Oberlander, Lamkin, Dingman & O'Laughlin, Kansas City, of counsel, for plaintiff.

Thomas J. Conway, Jr., E. E. Thompson, Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondent.

PRITCHARD, Commissioner.

This is a replevin action by which plaintiff sought the possession of six automobiles upon which it had automobile dealer's "floor plan" mortgages which had been filed for record. Defendant denied that plaintiff had any right or title in the automobiles and counterclaimed for actual and punitive damages for their alleged wrongful seizure by plaintiff under its writ of replevin.

The trial was to a jury. The trial court directed a verdict of possession for plaintiff as to one automobile, a 1957 Oldsmobile, sold to plaintiff's dealer (R. C. Woody of Clinton, Missouri) by Albert J. Yonke. Defendant cross-appeals upon the judgment against him on the directed verdict. The trial court also directed a verdict for defendant for $2,195.00 in damages for the taking by plaintiff of a 1957 Ford Country Sedan sold by Ted and Ruth Roush of Warsaw, Missouri, to R. C. Woody. Upon the remaining portions of defendant's counterclaim the jury returned a verdict for defendant of actual damages in the amount of $16,500.00 and punitive damages of $40,000.00. We have appellate jurisdiction by reason of the amount in dispute exceeding $15,000.00. Const.Mo.1945, Art. V, § 3, V.A.M.S.

The principal questions before us are whether (1) the mortgagor, Woody, had legal title to five of the automobiles so as to be able to grant plaintiff a mortgage

lien thereon which gave it a superior right of possession to that of defendant by reason of his purchase, and (2) whether plaintiff's "floor plan" mortgage which was filed for record was valid and gave it a superior right of possession to defendant, a used car dealer, who purchased them from car dealer R. C. Woody, who was allowed to retain possession of all automobiles and sell them "at retail" in its regular course of business for not less than the amount of respective mortgages thereon.

The business of plaintiff was and is the purchase of automobile, appliance, automotive equipment installment financing paper from dealers; the making of direct public loans through a separate subsidiary corporation; and the financing of automobiles for dealers' floor plan stocks.

Defendant, Al Blau, operated a used car business at 5900 Troost, Kansas City, Missouri, under the registered fictitious name, "Brush Creek Motors."

Prior to July 17, 1959, when plaintiff's petition was filed and the writ of replevin thereon was issued and executed against six automobiles in Blau's possession, plaintiff had done financing and floor plan mortgages for Woody for about two years. Woody was the Oldsmobile-Cadillac automobile dealer in Clinton, Missouri. The transactions with Woody were made by plaintiff's District Representative, Wayne Hughes. His procedure was to ascertain what automobiles Woody desired to floor plan, check them for physical condition and to compare the serial and motor numbers of automobiles with those upon titles thereto in Woody's possession. He would then complete the floor plan mortgage papers and promissory notes for the amount agreed to be loaned, the papers would be executed by Woody and a sight draft upon plaintiff through its bank would be delivered to Woody in the amount of the loan. Hughes would also check the titles to ascertain ownership and to see that there were no liens thereon.

The six automobiles here involved were purchased by Blau from Woody, and by use of the titles furnished him by Woody, transferred by Woody's "Re-assignment by Registered Dealer only" on the reverse side of the titles, Blau obtained a new title to each running to Brush Creek Motors. Blau's titles were left by him at the Suburban Bank of Kansas City which loaned him funds on a floor plan mortgage for his automobile inventory purchases. With more particularity we list the six automobiles, with pertinent dates of title transfers and filing of plaintiff's mortgages for record in the office of the Recorder of Deeds for Henry County, Missouri, as follows:

| Description (and Former Owner) | Transfer to Woody | Date of Recording Mortgage | Transfer to Blau | Titling in Blau |
|---|---|---|---|---|
| 1957 Oldsmobile (Yonke) | 5–1–59 | 5–13–59 | 6–20–59 | 6–23–59 |
| 1958 Cadillac (Harkness) | 5–14–59 | 5–27–59 | 6–24–59 | 7–1–59 |
| 1958 Oldsmobile (Gover) | 6–8–59 | 6–19–59 | 6–20–59 | 6–23–59 |
| 1958 Cadillac (Walker) | 6–20–59 | 6–23–59 | 6–24–59 | 7–1–59 |
| 1957 Ford (Roush) | 6–20–59 | 6–23–59 | 6–20–59 | 6–23–59 |
| 1957 Oldsmobile (Miner) | 6–9–59 | 6–19–59 | 6–24–59 | 7–3–59 |

The mortgages taken by plaintiff from Woody on the above automobiles provided for a warranty of clear title, that the dealer was the absolute owner thereof, with full right and power to mortgage same, and that dealer would not remove merchandise from the described premises without mortgagee's consent. Further provisions for care of the mortgaged property were included, and the clause was inserted: "Dealer may sell Merchandise at retail, in its regular course of business, for not less than the respective Mortgage Debts mentioned above. However, upon any sale by Dealer, Dealer shall forthwith account for and deliver the proceeds thereof to Mortgagee, for application upon the Mortgage Debt in respect to Merchandise so sold, and, until such accounting and delivery, Dealer shall hold the entire proceeds, in form as received in trust for Mortgagee, separate and apart from Dealer's own funds."

For the purchase of said six automobiles Blau paid Woody by checks (which cleared Blau's bank) a total of $13,450.00, and the titles thereto which had also remained in Woody's possession were executed on the days of sale and delivered to Blau.

In late June, 1959, plaintiff discovered in the course of its practice of checking dealers' mortgaged merchandise that several cars were missing from Woody's lot and he had not accounted to plaintiff for any sales moneys. Checks given by Woody for the amounts of his mortgages were returned by his bank marked "no account." Apparently some other creditor of Woody had seized whatever amounts were in his account at the bank. Plaintiff caused Woody to execute a further chattel mortgage on other property for some $42,000.00, and a replevin suit was later filed therefor in United States District Court in Kansas City. Woody's bankruptcy proceedings intervened in that action and nothing was realized by plaintiff.

Fictitious purchaser information was given plaintiff by Woody as to the missing automobiles. Later one of plaintiff's employees discovered at least one of the automobiles was on Blau's used car lot in Kansas City. Upon plaintiff's learning that fact it caused a replevin action for 12 automobiles to be instituted, and upon execution of the writ of replevin, the instant six automobiles were delivered to plaintiff and were by it sold.

The acknowledgments on the certificates of titles of five of the original automobile owners were taken by Jerry Woody, notary public, who is a son of R. C. Woody and who worked for him at the Clinton dealership. Yonke's acknowledgment was taken by a Jackson County notary public on March 1, 1959, and Woody Motor Company's transfer thereof to Blau was on June 20, 1959, being then notarized by Jerry Woody. The evidence was that the dates of acknowledgment on the title transfers were taken sometime after the sales were made by the owners of the automobiles, except Yonke. Jerry Woody so testified and also that it was his practice to wait until the automobiles were resold by Woody to affix his signature and notarial seal. With the exception of Yonke, on each of the title certificates the dates of acknowledgment of the original owners to Woody are the same as the dates of acknowledgments of Woody to Blau, i. e., Harkness, June 24, 1959; Gover, June 20, 1959; Walker, June 24, 1959; Roush, June 20, 1959; and Miner, June 24, 1959. The testimony of plaintiff's representative, Hughes, is that he did not check the titles as to notarization by owners when he inspected them for floor plan loan purposes. From the testimony of Jerry Woody and the dates of the acknowledgments of prior owners on the titles the jury could find that the notarizations were missing at the time of Hughes' inspection.

The testimony of Dr. and Mrs. Harkness on the trade of their 1958 Cadillac was

that Mrs. Harkness handled the transaction, and that Dr. Harkness remained in Warrensburg, Missouri. Mrs. Harkness testified that her husband did not appear before Jerry Woody, the notary public at Clinton, to give his acknowledgment thereon but he signed the title in Warrensburg. The testimony of Mr. Gover was that his wife, Fayta, signed his title at their home, and he then took it to Woody Motor Company where he signed it. Mr. and Mrs. Miner both signed their title, but in the wrong place. Their signatures appear on the title in the place where the dealer is supposed to sign; and in the seller's signature place are two names written in but which the Miners testified were not theirs, but for which Jerry Woody took the acknowledgments.

 The evidence here is clear that at the times plaintiff took the mortgages from Woody upon the Harkness, Gover, Walker, Roush and Miner automobiles, its representative, Hughes, inspected the certificates of title to make certain, as Hughes testified, that there were no liens and "to determine that the title and ownership on the vehicles have been assigned to the dealer and the dealer actually owns the property before you can—before he can take a mortgage on them." The jury could find further that at the times of Hughes' examination of the certificates of titles, although they were signed by the original owners, none of these four titles was acknowledged before a notary public in accordance with the form thereon prescribed by the Director of Revenue and § 301.210, RSMo 1959, V.A.M.S. Such acknowledgments on automobile titles have been repeatedly held to be mandatory. State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; Quinn v. Gehlert, Mo.App., 291 S.W. 138, 139; Boyer v. Garner, Mo.App., 15 S.W.2d 893, 894; Perkins v. Bostic, 227 Mo.App. 352, 56 S.W.2d 155; Universal C. I.ºT. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814, 817. An unacknowledged assignment of a certificate is not sufficient to vest legal title. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975. "The statute upon which those decisions (citing State ex rel. Conn. Fire Ins. Co. v. Cox, supra, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456, and Isaacson v. Van Gundy, Mo.App., 48 S.W.2d 208) are based is drastic, mandatory, and intended as a police regulation in the interest of the public welfare to prevent traffic in stolen automobiles." Robertson v. Snider, Mo.App., 63 S.W.2d 508, 509. (Parentheses added.)

In the case of Universal C. I. T. Credit Corp. v. Griffith Motor Co., supra, dealer Moore took Pruitt's car to sell on a commission. At the time, Pruitt signed the title but did not acknowledge it. Plaintiff's agent prepared a mortgage from Moore to it, and saw that the title to the automobile was in Pruitt, signed by him but not acknowledged. The court said, loc. cit. 243 S.W.2d 817, "The transfer of title, not acknowledged by Vernie Pruitt, was brought to the attention of plaintiff's agent at the time of the preparation of the mortgage and was a defect sufficient to put plaintiff upon inquiry to ascertain the true facts which would show that Moore had nothing to mortgage. Therefore, the mortgage lien relied upon by the plaintiff in this case was not a valid lien and the court was justified in finding for defendant. Plaintiff must rest upon the strength of its own title and not upon the weakness of the defendant as held in the Pearl case [Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W. 2d 975] cited herein."

 The title certificates which plaintiff's representative examined as to ownership were at that time defective upon their faces (except the Yonke certificate). They showed no title in Woody such as he could then mortgage. Such facts put Hughes on inquiry, so that he could take the proper steps to have the titles properly assigned to Woody by the former owners. This he

did not do, and it follows that no legal lien would be secured to plaintiff. The titles of Blau, on the contrary, were good on their face, and we add that they were certainly sufficient to cause the Director of Revenue to issue new titles to Brush Creek Motors upon Blau's application. Benanti v. Security Ins. Co., infra. Since the issue at this point is upon the theory of who had the better title and right of possession (aside from the issue of the validity of the floor plan mortgage below discussed as to the Yonke automobile), we rule thereon that defendant must prevail. Mutual Finance Company v. Goodman Finance Company; Mo.App., 367 S.W.2d 31. At the time of the mortgage, the titles not being properly assigned, plaintiff had no legal lien which up to the time the titles were assigned to Blau would have given it a right to have the titles assigned to itself upon foreclosure, or to a purchaser at any foreclosure sale. On the facts of this case, Blau had the better title and right to possession to the five automobiles above mentioned. See Peper v. American Exchange Nat. Bank in St. Louis, 357 Mo. 652, 210 S.W.2d 41, 45 [3, 5]; Wills v. Shepherd, 241 Mo.App. 102, 231 S.W.2d 843; and Seward v. Evrard, 240 Mo.App. 893, 222 S.W.2d 509, 513, and cases cited; Bank of Ionia v. Bank of Eldon, Mo.App., 365 S.W.2d 770, 773.

■ Plaintiff's argued theory that it had at least an equitable mortgage on the five automobiles which gave it a superior right of possession as against Blau avails it nothing. No doubt such a theory would be good in an action in replevin between the parties to the mortgage, or those who had actual notice of the transaction. 14 C.J.S. Chattel Mortgages § 48, p. 653; and compare Langford v. Fanning, Mo.App., 7 S. W.2d 726, 728 [1]. No doubt also that such equitable mortgage, being a "special interest," would be good as against a trespasser, or one who had no title or right of possession whatsoever. Rankin v. Wyatt, 335 Mo. 628, 73 S.W.2d 764, 767, 94 A.L.R.

941; M.F.A. Cooperative Ass'n of Mansfield v. Murray, Mo.App., 365 S.W.2d 279, 285; National Bond & Investment Company v. Mound City Finance Company, Mo. App., 161 S.W.2d 664, 666. Here, Blau had certificates of title, duly assigned to him, which were valid on their face. He was certainly not a trespasser, and he was not one without titles or without any right to possession of the automobiles. Blau paid a valuable consideration for all of the automobiles in question. He had no actual notice of plaintiff's mortgages on the five automobiles, and those mortgages, because Woody had no legal title to mortgage at the time they were taken, were not constructive notice to Blau by reason of their being filed for record.

■ The matter of Blau's actual knowledge under the facts of the rights of third parties in the automobiles was submitted to the jury for a finding. The jury could have reasonably found that Blau in good faith thought that Woody purchased the automobiles from his vendors on the same day he sold them to Blau; and that there was nothing about the title certificates themselves which would have put Blau on notice and inquiry of any rights of third persons or any infirmity of the transfer from Woody's vendors.

■ With respect to the Roush automobile, the date of filing of plaintiff's mortgage was after Woody's sale thereof to Blau, so in no event could that mortgage constitute constructive notice to Blau. Hussey v. Ellerman, Mo.App., 215 S.W.2d 38, 42 [7, 8]; § 443.460, RSMo 1959, V.A. M.S.

■ Plaintiff contends that by reason of the fact that Woody invested his son, Jerry, with a general power of attorney to execute mortgages and instruments disqualified Jerry to act as notary public on the certificates of titles because of having a beneficial interest. The only testimony on the subject of the power of attorney

was Jerry's testimony. He testified that he had never exercised the power, and that he was only a salaried employee. "Ordinarily, unless otherwise provided by statute, general employment or employment as agent or attorney in a matter gives a notary no such interest as to invalidate an official act done by him." 66 C.J.S. Notaries § 6, p. 618. The contention is ruled against plaintiff, as is the further matter that two of the certificates of title being assigned "Woody Motor Company by Nancy Skaggs" and one "by Naomi Smith" rendered them void. In Benanti v. Security Ins. Co., 224 Mo. App. 410, 27 S.W.2d 69, 71, a certificate of title was endorsed "A. E. Hutchings, Per H. B. Hutchings." It was held that there was a legal transfer of ownership of the car, the court saying, "In the case at bar the office of the secretary of state was doubtless satisfied with the proof of ownership by plaintiff, since it accepted it and issued the certificate of transfer and registered the same." So here, Blau's assignment from Woody was sufficient to cause the Director of Revenue to register the transfer and to issue titles, not only on the two assignments by agents, but also on all six assignments.

■ Plaintiff contends that Instruction No. 3A, given on behalf of Blau, was error. That instruction submitted for a finding the infirmities in Woody's title transfers from his vendors at the time of the mortgages. Plaintiff's grounds in attacking the instruction are that (1) it incorrectly states the law; (2) it constitutes a peremptory instruction to find for defendant; (3) it fails to define the right of possession; and (4) it contradicts plaintiff's Instruction No. 2. General objections only were made by plaintiff at the close of the case to all instructions. None of the allegations of error in Point II are set forth in plaintiff's motion for new trial, except (4) above. They are not preserved for appeal. Presenting questions for the first time on appeal presents nothing for review. Civil Rule 83.13, V.A.M.R.; Georg v. Koenig,

Mo., 370 S.W.2d 356; Fields v. Missouri Power and Light Co., Mo., 374 S.W.2d 17. The remaining allegation (4) is too general to present anything for review. Allegation (4) does not state why or in what manner Instruction No. 3A contradicts Instruction No. 2. It is therefore insufficient. Swope v. Emerson Electric Manufacturing Co., Mo., 303 S.W.2d 35, 41 [7, 8]. Plaintiff's Point II is overruled.

We arrive now at Blau's cross appeal for which he claims as error the trial court's direction of a verdict (of possession) for plaintiff upon the Yonke car, and the trial court's refusal to give his Instruction No. 20. That refused instruction is to the effect that if the jury found in reference to all six of the automobiles purchased by Blau the plaintiff gave its permission and consent to Woody to retain possession of the six automobiles, and gave its consent and permission to Woody to sell said automobiles to the public generally, and that defendant purchased the automobiles on two different dates mentioned in the instruction, and paid the purchase price therefor, and defendant was rightfully in possession of the automobiles on July 17, 1959, then plaintiff was not entitled to the exclusive possession of any of the automobiles, and the taking thereof was wrongful and unlawful, and the jury should find in favor of defendant upon his counterclaim and against plaintiff on its petition.

■ The provision in plaintiff's chattel mortgage was specifically that Woody could sell the mortgaged automobiles in his regular course of business *at retail*. The italicized words could mean only that sales could be made to those persons of the buying public who were consumers of the merchandise. Those persons were the only ones who could purchase the mortgaged automobiles free of plaintiff's lien. By inserting the permission clause in its mortgage plaintiff, as it had a right to do, has expressly recognized the general rule that members of the buying public are protected where a mortgage gives.

permission to the mortgagor to retain possession and sell merchandise in the usual or regular course of business. In such case there is a waiver of the mortgage lien. 15 Am.Jur.2d Chattel Mortgages, §§ 150, 189, pp. 320, 357; Annotations, 97 A.L.R. 648; 73 A.L.R. 236; 14 C.J.S. Chattel Mortgages § 262, p. 874; Moffett Bros. & Andrews Commission Company v. Kent, Mo., 5 S.W.2d 395, 400 [1–4]; Morris Plan Company v. Universal Credit Company, 237 Mo.App. 365, 168 S.W.2d 136, 140 [7]; Bordman Investment Company v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72, 76 [4]. · Although it may be that plaintiff, a large financier under floor plan arrangements for dealers, was aware of a general custom and practice of dealers to sell and purchase automobiles among themselves "for convenience" (see P & E Finance Company v. Stonecipher, Okl.Sup., 386 P.2d 765, 768), Blau himself was also aware that it is customary for dealers to floor plan their automobiles on hand. Thus, Blau could not ignore his own knowledge and claim the benefit of plaintiff's knowledge of dealer-to-dealer transactions. It may well be here that plaintiff sought specifically to avoid the practice of dealers trading among themselves by inserting the "retail sale" limitation in its mortgages. In any event, Blau could have protected himself by inspecting the mortgage on record of the Yonke automobile (of which he had constructive notice) to ascertain if Woody had the right to sell it. Universal C.I.T. Credit Corporation v. Evans, 234 Ark. 133, 350 S.W.2d 606.

We do not adopt the construction of the words "at retail" so that it would include a wholesale dealer-purchaser, who purchases for resale, as contained in the Oklahoma case, P & E Finance Company v. Stonecipher, supra, or Commercial Credit Corp. v. General Contract Corp., 223 Miss. 774, 79 So.2d 257. We hold that the words here used do not include a dealer-purchaser who acquires an automobile for resale such as Blau here, who is therefore not protected from plaintiff's mortgage lien under the above-stated general rule on consent to sale of mortgaged merchandise. The case of Colonial Finance Company v. McCrate, 60 Ohio App. 68, 19 N.E.2d 527, is close but not controlling to the facts and law in this case, although the decision there turned upon a differentiating statute on certificate of title assignments between dealer-to-dealer sales and dealer to a member of the buying public (so distinguished in General Credit Corp. v. First National Bank of Cody, 74 Wyo. 1, 283 P.2d 1009).

Refused Instruction No. 20 did not allude in any manner to the limitation in the consent to sell (at retail only) in plaintiff's mortgage. It merely required a finding that Woody had permission to sell automobiles to the *public generally,* which, as we have held above, did not include dealer Blau. It was therefore not error to refuse the instruction.

There was no evidence adduced which would create a jury issue as to the right of possession in plaintiff of the Yonke automobile. Plaintiff established that it had a valid mortgage filed of record on that automobile, which as a matter of law would be constructive notice to Blau as to Woody's right to sell it only at retail. There was no evidence adduced which would tend to show that there was an implied authority in Woody to sell to dealers such as Blau free of the mortgage lien. There was no showing that any *mortgaged* automobile was sold to any dealers prior to the six in question. Even if there had been sales of automobiles upon which plaintiff had mortgages, an implied waiver of lien could come about only by a further showing that plaintiff had knowledge of other sales and acquiesced therein. 7A Blashfield, Cyclopedia of Automobile Law and Practice, § 4724, p. 66; Moffett Bros. & Andrews Com-

mission Company v. Kent, supra; 14 C.J.S. Chattel Mortgages § 262 b, p. 877 et seq. See Bernhagen et al. v. Marathon Finance Corporation et al., 212 Wis. 495, 250 N.W. 410, where mortgagee's knowledge of and acquiescence in manner of sales to dealers by mortgagor gave to the latter apparent authority to sell automobiles free and clear of mortgages, and the lien thereof was held to have been waived. It was not error to direct a verdict for plaintiff on the Yonke automobile.

■ Even though, as we have held above, plaintiff did not have a superior right of possession of five of the automobiles by reason of a defective assignment from Woody's vendors, we hold that there was not a sufficiency of evidence to justify a submission to the jury of the issue of punitive damages. Plaintiff's mortgages were apparently valid and at least colorably gave it a superior right of possession. It quite reasonably believed that its liens were good as against a dealer-purchaser. Significantly, plaintiff, did not seek possession of automobiles which it learned had been sold to persons who were not dealers, those sales being within the terms of the mortgage. The fact that plaintiff's agent, Hughes, erred in failing to secure a legal title to five of the automobiles for Woody is not a basis for holding that plaintiff was unreasonable and disregarded Blau's rights in instituting the replevin action. Nor do the facts of plaintiff giving Woody a restricted right to sell, leaving certificates of title with him to effectuate that purpose, as was its universal practice, show that it had no basic, legal right to proceed in replevin against a dealer-purchaser who purchased the automobiles from Woody in violation of what appeared to be a valid limitation as to all six automobiles, and certainly as a matter of law as to the Yonke car. It does not appear in evidence whether or not plaintiff had knowledge of the date of sale of the Roush car, so that it could have known that the mortgage was filed for record after the sale to Blau. Such fact, however, as to one automobile, would not destroy a reasonable belief in the right to possession of the remaining five.

■ We deem that plaintiff's failure to check the state of the titles to the automobiles in the Director of Revenue's office is not significant. If all of the mortgage liens had been good, the plaintiff would have prevailed on the issue of the superior right to possession even as against Blau regardless of the fact that he had new titles from the Director of Revenue. That information concerning Blau's reissued titles would have been no more than the information as to his possession of the automobiles, if plaintiff had a superior right to possession to them. Failing to check the title certificates in the Director of Revenue's office does not show bad faith, or malice, and has no bearing on the issue of punitive damages.

■ With respect to the facts of the execution of the writ of replevin, we find nothing to indicate that the deputy sheriff was acting under the direction of plaintiff in assaulting or in using abusive language toward Blau's employee, Buford, or in reaching for a gun, as Buford testified. For all that appears, the deputy, who as the evidence shows had executed many writs of replevin in the course of his duties, was merely acting under the direction of the Sheriff's office in carrying out an order of the court. Walker v. Huddleston, Mo.App., 261 S.W.2d 502, 507 [8]. One incident at the time of the taking of the cars under the writ of replevin occurred when Blau attempted to take the keys from a 1957 Ford Station Wagon (thus impeding the execution of the writ). One of the men then grappled with Blau over the keys and pushed him in the stomach "real hard" and flattened him against the building. That single incident does not show a reckless disregard of Blau's rights and interests

which would entitle him to punitive damages, but merely a resistance to Blau's interference with the execution of the writ, lawful on its face.

■ It has been held that in order to recover punitive damages there must be present malice—the intentional doing of a wrongful act. "This means that defendant not only intended to do the act which is ascertained to be wrongful *but that he knew it was wrongful when he did it*. There must be, in order to justify punitive damages, some element of wantonness or bad motive, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and with a bad motive." (Emphasis added.) Luhmann et al. v. Schaefer, Mo.App., 142 S.W. 2d 1088, 1090 [7, 8]. As we have indicated above, plaintiff did not know that it had no lawful right of possession to at least four of the six automobiles, and therefore that the seizure of the automobiles was wrongful when done. See also Hussey v. Ellerman, Mo.App., 215 S.W.2d 38; Thomas v. Commercial Credit Corporation, Mo.App., 335 S.W.2d 703; Annotation, 153 A.L.R. 763; 15 Am.Jur. Damages, § 278, p. 713. Plaintiff was merely mistaken in its belief that it was entitled to the possession of the automobiles. Colorado Kenworth Corporation v. Whitworth, 144 Colo. 541, 357 P.2d 626, 97 A.L.R.2d 990; 2 Sutherland on Damages, 3rd Ed., § 393, p. 1095.

That part of the judgment awarding punitive damages in the amount of $40,000.00 is reversed; otherwise the judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:
The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.