VIRGIL AND BERTHA WILLS, APPELLANTS, v. LEE W. SHEPHERD, RESPONDENT.—231 S. W. 2d 843.

Kansas City Court of Appeals. Opinion delivered June 5, 1950.

*Newbill, Brannock, Buck & Gray, Watkins & Watkins,* for appellants.

*Landis & Landis* and *Gordon C. Shaffer, Jr.,* for respondent.

104

BOUR, C.—This is an action in replevin brought without bond by Virgil and Bertha Wills, husband and wife, to recover possession of an automobile from defendant, Lee W. Shepherd. The petition is in the usual form. The answer is a general denial and a plea of estoppel, and by way of counterclaim defendant asks that the title to the automobile be quieted in him. Plaintiffs filed a reply to the answer and counterclaim. The pleadings embraced the issues

which were tried and decided, and require no further notice. A trial before the court, without a jury, resulted in a finding and judgment in favor of defendant on plaintiffs' cause of action, and in favor of defendant on his counterclaim. Plaintiffs thereupon filed a motion for a new trial, and this being overruled, they have brought the case to this court by. appeal.

Plaintiffs' evidence showed that they owned a 1947 Chevrolet automobile which they advertised for sale. Their certificate of title to the car had been duly issued to "Virgil and/or Bertha Wills." On March 21, 1949, one William O'Keefe came to plaintiffs' home in Kansas City, Missouri. He represented himself to be a dealer in used cars with two places of business in Kansas City, Missouri, and agreed to buy the car for $1550.00. Virgil Wills endorsed the certificate of title by signing "Virgil or Bertha Wills by V. Wills" in the blank assignment form on the back of the certificate, but plaintiffs did not acknowledge the same and no assignee was named in the form, this space being left blank. Plaintiffs' counsel admitted at the trial that Mrs. Wills consented to the endorsement of her name on the assignment, and stated that plaintiffs were not making an issue of the fact "that she did not personally sign her name." Wills delivered the car and the certificate so endorsed to O'Keefe and accepted O'Keefe's check for $1550.00, drawn on a bank in Kansas City, Missouri. Wills testified on cross-examination that he accepted the check "in lieu of cash"; that when he delivered the certificate in the form described he intended to transfer the title to the car to O'Keefe; that he did not know O'Keefe prior to this transaction; and that he completed the transaction without making an investigation to determine whether O'Keefe had any places of business in Kansas City or whether the check was good. The next morning plaintiffs learned that the check was worthless and that O'Keefe had not been in business at either of the places he had mentioned for about a year.

On March 21, 1949, the same day O'Keefe obtained possession of the car and the title certificate, he took the car to Glenn A. Seward, a registered car dealer in St. Joseph, Missouri, doing business as the Seward Motor Company. Seward, a witness for defendant, testified that O'Keefe was accompanied by a man whom he introduced as the owner of the car; that the man posed as the owner and stated that the car was new when he bought it; that its speedometer showed the actual mileage, and that it had never been in a wreck. Seward said that he was led to believe the man was Virgil Wills; that he had known O'Keefe for three or four years, but did not know Wills at that time and had no knowledge that O'Keefe's companion was not Wills. Seward agreed to buy the car for $1425.00. Seward testified that the man with O'Keefe took the certificate of title from his pocket and laid it on a desk. Of course, this man

did not endorse the certificate since Wills had already done so in Kansas City, but Seward stated that he "supposed he wrote it on there while I was writing out the checks." Then Seward paid the purchase price to O'Keefe with two checks and $200 in cash. The two cancelled checks made payable to "Bill O'Keefe" were introduced in evidence by defendant. The car, together with the title certificate which O'Keefe received from plaintiffs, was delivered to Seward. The certificate was delivered without making any insertions or changes in the assignment form on the back of the certificate. Seward testified that the defendant was not present at the time of this transaction. Plaintiffs' counsel admitted that "Gene Reed, if personally present, would testify to substantially the same facts as were testified to by Glenn Seward, relative to what occurred on the occasion in St. Joseph, Missouri, when Seward testified that O'Keefe and an unknown person with O'Keefe and Seward were present and Seward obtained the car and the title endorsed in blank to the car in question."

Seward and defendant both testified that they did not know O'Keefe had given Wills a worthless check until about a month after the car and title certificate were delivered to Seward.

Seward and defendant also testified as follows: That prior to the transaction last mentioned, the defendant instructed Seward to purchase, as defendant's agent, a Fleetline Chevrolet automobile; that Seward was acting as defendant's agent on March 21, 1949, when he obtained the car in controversy from O'Keefe and his companion; that after Seward obtained the car he notified defendant of the purchase and later inserted defendant's name, as assignee, in the assignment form on the back of the title certificate, noted therein a mortgage on the car in favor of Seward Motor Company for $1026.00, dated March 26, 1949, and also notarized the assignment under date of March 26, 1949. Seward was a notary public and defendant was present when Seward attempted to complete the assignment form in the manner described. Seward also prepared an application for a new certificate of title which defendant signed. Defendant then sent the application and the title certificate in question to the Director of Revenue in this state, and the Director issued a new certificate dated April 5, 1949, naming defendant as the registered owner of the car in controversy. Defendant paid Seward for the car.

Plaintiffs located the car in the possession of defendant and filed this suit on June 1, 1949.

Plaintiffs contend that the trial court erred in rendering judgment in favor of defendant. In support of this contention they urge, among other reasons, the following: (1) that the title to the car, and right of possession, remained in plaintiffs because the certificate of title was not assigned in accordance with the statutory

requirements; (2) that the evidence showed defendant was not an innocent purchaser of the car and, therefore, plaintiffs were not estopped to assert their title thereto.

Section 8382(d), R. S. Mo. 1939, Mo. R.S.A. sec. 8382(d), provides: "In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the Director of Revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. The buyer shall then present such certificate, assigned as aforesaid, to' the Director of Revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, * * *." The form of assignment prescribed by the Director of Revenue, and appearing on the reverse side of the certificate of title here in question, contained a warranty of title, blanks for a statement of any liens on the motor vehicle and for the insertion of the name of the assignee, a place for the signature of the assignor, followed by a form of acknowledgment by the assignor. Section 8382(d) also provides: "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." '

In Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S. W. (2d) 975, it appeared that Pearl, a used car dealer, purchased two used cars from two persons living in the vicinity of Mexico, Missouri, paying cash therefor, and received from the vendors the cars and the certificates of title which had been duly issued to the vendors. The assignment on each certificate was signed by the assignor but not acknowledged; and no name of an assignee was written therein, so that the assignments were not completed in the form required by section 8382(d), supra. Pearl took both cars to Independence, Missouri, and there delivered the cars to the Security Motor Company which had agreed to buy them. He also delivered to the motor company the two certificates of title without further change therein. The deal was to be on a cash basis, but Pearl accepted the motor company's check which he deposited in his bank at Mexico the next morning. The check was returned unpaid in about four days. On the day Pearl deposited the check the motor company gave a mortgage on the cars to the defendant, Interstate Securities Company.

Defendant took the said certificates of title and later obtained possession of the cars and secured new title certificates on affidavit of repossession and mortgage foreclosure. Pearl brought an action against the defendant in two counts, replevin and conversion. The Supreme Court, en Banc, held that the transfer of the certificates was void and did not vest the legal title to the cars in Pearl, because the assignments of the certificates did not comply with the motor vehicle statute, section 8382, and that defendant acquired no title to the cars through the mortgage and foreclosure, since the Security Motor Company never got any title from Pearl that it could mortgage; that although Pearl did not get legal title to the cars, he could maintain an action of replevin or conversion against defendant. The court said that Pearl had paid the full purchase price of the cars; that his vendors intended for him to have the cars and claimed no rights against him; and, therefore, that he "had a special interest in the cars which gave him a right of possession superior to defendant's claim under a mortgage from a mortgagor who never got any title." The court also held that while defendant might have had evidence to show estoppel, it did not appear in Pearl's own evidence. This decision was followed in Peper v. American Exchange Natl. Bank in St. Louis, 357 Mo. 652, 210 S. W. (2d) 41.

As stated, the assignment form on the certificate which Virgil Wills delivered to O'Keefe in the instant case was signed by Wills but not acknowledged, and the name of an assignee was not written therein. It is quite clear, under the rulings in the Pearl and Peper cases, supra, that O'Keefe did not get title to the car when he received the title certificate from Wills. It follows, of course, that neither Seward nor defendant acquired the title when the certificate was delivered to Seward. However, defendant contends that the unacknowledged assignment in blank "did transfer a special interest to the defendant with authority to complete the assignment by filling in his name and having it notarized so that it would thereupon convey a good title," citing as authority the Pearl case, supra.

But the Pearl case does not so hold. On the contrary, it holds the exact opposite. In that case the Supreme Court pointed out that Pearl "could have completed compliance with section 8382 so as to have title vested in him by writing in his name as assignee and getting a notary to take the acknowledgments of his assignors," because he paid the full purchase price of the cars and obtained legal possession of them from the original owners, and his vendors claimed no rights against him. However, this statement is not applicable to the defendant in the present case. Defendant's evidence showed that Seward attempted to complete the assignment by inserting defendant's name as assignee and then, acting as a notary, subscribed his own name to the certificate of acknowledgment and

placed notarial seal thereon. In the Pearl case, the Supreme Court said (206 S. W. (2d) l. c. 978): "He (Pearl) had only an unacknowledged assignment, and this was not sufficient to vest the legal title in him. * * * Nor would *he* or *anyone* else have had the right to fill in the name of Security (Security Motor Company) as assignee from the holders because *he* was *the buyer* and Section 8382 required the assignment to be made *to him*. To do so would be a misdemeanor. Sec. 8404(d), R. S. Mo. 1939, Mo. R.S.A." (Italics ours.) So, in the instant case neither Seward nor anyone else had the right to insert defendant's name as assignee of the plaintiffs because O'Keefe was the buyer, and the statute required the assignment to be made to him. Even if defendant's name had been rightly inserted as assignee, the defendant acquired no title to the car in the absence of acknowledgment of the assignment by plaintiffs. Peper v. American Exchange Natl. Bank in St. Louis, supra. The certificate of acknowledgment on the assignment in question reads: "Subscribed and sworn to before me this 26 day of March 1949. Glenn Seward, Notary Public, County of Buch. Missouri. My commission expires 4-24-50." This is a false certificate for it is admitted that plaintiffs did not appear before Seward and acknowledge the execution of the assignment. We conclude, therefore, that defendant did not acquire title to the car in question; the title thereto remained in plaintiffs.

But defendant contends that if title to the car remained in plaintiffs, as we have held, then plaintiffs were estopped to assert their title because they "set in action the series of events which led up to the purchase by defendant," and "defendant was an innocent purchaser for value and was entitled to rely on the possession of the car and certificate of title which plaintiffs had delivered to O'Keefe." Defendant relies on the doctrine of estoppel that where one of two innocent persons must suffer a loss by reason of the wrongful acts of a third person, the one whose acts made it possible for the third person to bring about the loss must sustain it. The doctrine applies where the owner of property clothes another with apparent title and a third person in good faith relies on such ostensible ownership. Seward v. Evrard, Mo. App., 222 S. W. (2d) 509, 513, and cases cited. Plaintiffs contend that defendant was not an innocent purchaser because defendant's own evidence showed the assignment on the title certificate was incomplete when the certificate was delivered to Seward, so that Seward had notice of the defects in the title, citing Pearl v. Interstate Securities Co., supra, where the court said (206 S. W. 2d l. c. 979): "Of course, plaintiff might be estopped from making this claim. Plaintiff said he left the assignments with Security uncompleted as a protection to him pending payment of the check. Defendant's contention is that this made it possible for Security to defraud it and that it is in the position

of a bona fide purchaser without notice of any defect in its mortgagor's title, citing Pettus v. Powers, Mo. App., 185 S. W. 2d 872; Anderson v. Arnold-Strong Motor Co., 229 Mo. App. 1170, 88 S. W. 2d 419. The weakness of defendant's position is that defects in the title of its mortgagor were apparent on the face of the title certificates of these cars held by it. These defects at least were sufficient to put defendant upon inquiry to ascertain the true facts, and the true facts would have shown that Security had nothing to mortgage. Defendant may have evidence to show estoppel but it does not appear from plaintiff's own evidence.''

Defendant asserts that there is a distinction between the present case and the Pearl case. He says the defendant in the Pearl case knew that it was not dealing with the persons whose names appeared on the title certificates as assignors, when it took a mortgage on the cars from Security Motor Company, so that the defects in the title of the mortgagor were apparent on the face of the certificates; but that in the instant case ''due to the representations which the plaintiffs made possible by their conduct, the defendant, acting through Seward, thought he was purchasing from Wills himself, and therefore could not tell from the face of the certificate that there had been any transfer with the assignment made in blank. The purchase of Seward for the defendant from 'Wills' through O'Keefe is in reality the same as if Seward had bought personally from the real Wills.''

Assuming that all of Seward's testimony was true and that he honestly believed that the imposter with O'Keefe was Virgil Wills, then, as defendant says, Seward could not have ascertained from the face of the certificate that there had been a prior transaction at which time the true owners endorsed the assignment in blank and delivered the car and the certificate to another person. It does not necessarily follow, however, that defendant was an innocent purchaser. As heretofore stated, the certificate showed on its face that it had been issued to ''Virgil and/or Bertha Wills.'' When Seward accepted the certificate it also showed on its face that the assignment had been endorsed in blank by writing thereon ''Virgil or Bertha Wills by V. Wills,'' but not acknowledged. Thereafter, Seward inserted defendant's name as assignee and endorsed the assignment. Assuming again that Seward believed the pretender to be Virgil Wills, and further, that he was justified in believing that the pretender endorsed the assignment in his presence, still, absent an acknowledgment by Bertha Wills, it cannot be said that Seward was without notice of any defect in the title. See Peper v. American Exchange Natl. Bank in St. Louis, supra. The certificate showed on its face that Bertha Wills had an interest in the car. Whether Wills and wife held the car as tenants by the entirety, as

joint tenants, or as tenants in common, is immaterial; for in either such case Mrs. Wills' interest could not be transferred to another by the act of her husband. 41 C.J.S. sec. 35, pp. 483, 484. Furthermore, Mrs. Wills could not make a valid assignment of her interest in the car without acknowledging the execution of the assignment as required by Section 8382(d) of the motor vehicle statute. It has been held that a person, by appearing before an officer and making a formal acknowledgment of an instrument, thereby adopts as his signature his name written on the instrument by another person. 1 Am. Jur. sec. 23, p. 325; 57 A.L.R. 525. While plaintiffs' counsel admitted at the trial that Mrs. Wills consented to the endorsement of her name on the assignment, he did not admit that she appeared before Seward and acknowledged the assignment, and it is conceded that she did not do so. Since it appeared on the face of the certificate that Mrs. Wills had an interest in the car, and since Seward knew that she did not acknowledge the assignment, we believe that this was sufficient to put him upon inquiry to ascertain the true facts. For this reason, if no other, the defendant was not an innocent purchaser. Defendant admits that he is bound by the knowledge of his agent, Seward. We hold, therefore, that plaintiffs were not estopped to maintain this action.

It follows that the trial court erred in rendering judgment against plaintiffs on their petition and in favor of defendant on his counterclaim. The judgment should be reversed and the cause remanded with directions to enter judgment for the plaintiffs for the return of the automobile in question or for the assessed value thereof, at the election of the plaintiffs; and for the purpose of such election, the value of the automobile as of the time of judgment herein appealed from and the damages for its detention should be determined. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiffs for the return of the automobile in question or for the assessed value thereof, at the election of plaintiffs; and for the purposes of such election, the value of the automobile as of the time of judgment herein appealed from and the damages for its detention shall be determined. *Dew, P. J.,* and *Broaddus, J.,* concur. *Cave, J.,* not participating.