**MERCHANTS–PRODUCE BANK,**
Appellant,
v.
**MACK TRUCKS, INC., Appellee.**
No. 19291.

United States Court of Appeals
Eighth Circuit.
June 13, 1969.

Bernard L. Balkin and Donald D. Weinstein, of Achtenberg, Sandler & Balkin, Kansas City, Mo., for appellant, and filed brief.

James J. McGannon, of Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, Mo., for appellee, and filed brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

Plaintiff, Merchants-Produce Bank, brought suit against defendant, Mack Trucks, Inc., for conversion in the amount of $30,000.00, alleging that Mack Trucks acquired and subsequently sold

four GMC trucks subject to the lien of a certain recorded chattel mortgage held by the Bank. In the alternative, the Bank prayed for judgment in the amount of the proceeds of the sale of said trucks. This is a diversity case in which the parties waived a jury and stipulated that the pleadings should be considered as cross-motions for summary judgment. They also entered into an agreed statement of facts. The Honorable John W. Oliver, before whom the case was tried upon the stipulation and briefs filed, found the facts and conclusions of law in a thorough but unreported memorandum and order upon which judgment was based in which it was held that plaintiff's mortgage sued upon was invalid as against the defendant, Mack Trucks, Inc., and granted Mack's motion for summary judgment. We affirm.

The following facts were stipulated:

"Merchants-Produce Bank claims that it had a lien against four G.M.C. trucks which were purchased by Mack Trucks, Inc. in July, 1964, in Albuquerque, New Mexico, from Hickman Mills Plaza, Inc. The Bank's claim is based upon a note and chattel mortgage executed by Hickman Mills Plaza, Inc., Thomas E. Hudson and Kathlyn Hudson to Western Equipment Leasing Company which mortgage was recorded in Jackson County on March 5, 1964, and then assigned to the Bank. After purchase of said trucks, Mack resold same. The Bank's claim against Mack is for damages for conversion of said property."

The parties agreed that the legal issues presented were as follows:

"It is plaintiff's position that the chattel mortgage herein sued upon was a valid lien on the subject trucks as against defendant. It is defendant's position that the chattel mortgage herein sued upon was invalid as against this defendant, and further that the plaintiff is estopped from asserting the validity of the mortgage as against this defendant. In the event that the court finds that said chattel mortgage was valid as against the de-fendant, a further issue for determination is the amount of damages which plaintiff would be entitled to recover against defendant."

Kansas certificates of title on three of the trucks, Vehicle Nos. Y–1025, Y–1027 and Y–1082 (hereinafter referred to as trucks 1, 2 and 3) were issued to George Bennett Construction Company on November 23, 1960. The construction company later went bankrupt and, pursuant to a turnover order of the bankruptcy court dated December 23, 1963, Merchants-Produce Bank received possession of these three trucks and a fourth truck (Vehicle No. Y–1041 which had not been titled at that time) by reason of the fact that it was a holder of a chattel mortgage against said equipment which was then in default, and the plaintiff moved the trucks from Kansas City, Kansas to a lot in Kansas City, Missouri. On January 15, 1964, an officer of Bennett Construction Company furnished the plaintiff certificates of title on trucks 1, 2 and 3, assigned in blank. It was discovered that Bennett had never obtained a certificate on the fourth truck, Vehicle No. Y–1041, and plaintiff arranged to have one of its customers, Studna Garage and Auto Sales, procure a title certificate on the truck, which was endorsed in blank and delivered to the Bank.

The plaintiff never filled in its name as assignee in the blank spaces on these certificates of title, and an officer of plaintiff, Porter Laughman, testified that the reason this was not done was to avoid the necessity of registering them, obtaining Missouri certificates of title, and paying license fees and sales tax thereon. The trucks were thereafter sold to Western Equipment Leasing Company and plaintiff delivered the title certificates to Western in blank, just as they had been received from Bennett and Studna, and noted a lien in its favor on the reverse side thereof. On or about March 2, 1964, Western, in turn, sold the trucks to Hickman Mills Plaza, Inc., a Missouri corporation, also delivering the title certificates as endorsed by Bennett and Studna in blank. Hickman

filled in its name as purchaser and gave a mortgage to Western dated February 29, 1964, to which was attached a note dated March 2, 1964. The mortgage was recorded in Jackson County, Missouri on March 5, 1964, and on April 1, 1964 it was assigned by Western to the plaintiff, part of the security recited therein being the four trucks here involved. Superimposed over plaintiff's notation of lien on the certificates of title were the words, "PAID Feb. 28, 1964," followed by the initials "E.F." Judge Oliver held that it was "a fair inference from all of the facts and circumstances in evidence that the initials 'E. F.' which appear under the 'PAID Feb. 28, 1964' stamp were those of Ed Frazee of Western Equipment."

In July, 1964, Hickman traded in the four trucks on two new trucks which it purchased from defendant Mack Trucks, Inc., and delivered the four Kansas certificates of title to defendant, all of which showed Hickman as the named purchaser on the assignment of title. Additionally, an officer of Hickman executed a notarized bill of sale on each of the trucks, together with an affidavit certifying Hickman was the owner thereof.

Defendant made no further inquiry to ascertain whether the lien to plaintiff which was noted on the reverse side of these certificates had, in fact, been paid as stamped thereon, but presented the certificates along with the bill of sale and affidavit of ownership from Hickman to New Mexico licensing authorities and obtained certificates of title to the trucks. Thereafter, defendant sold them to various customers in the course of its business.

■ The court held that since the Missouri statute relating to the transfer of title to motor vehicles, V.A.M.S. § 301.-210, subd. 4,[1] was not complied with by plaintiff, or those through whom it claimed title, the sales between those parties were fraudulent and void *ab initio* under Missouri law and that the "title" to the trucks was not transferred through the parties so as to vest in Hickman any interest in the trucks which it could mortgage. Plaintiff contends that this section is not applicable here because there was no evidence that these trucks had ever been driven on the Missouri highways or were intended to be used there, citing State of Missouri v. Hall, 351 S.W.2d 460 (Mo.App.1961), and Exchange Bank of Kahoka v. Bash, 234 S.W.2d 341, 345 (Mo.App.1950). Hall held that an automobile must have a license plate before being operated on any state highway, although not on defendant's own property, but the validity of the assignment of title was not an issue in the case. In the *Bash* case, the "vehicles" involved were heavy road making machinery and the court held that the transfer thereof did not have to be in compliance with the strict provisions pertaining to motor vehicles used on the highway, said provisions being a police measure to stop the traffic in stolen automobiles. At the time of the facts here alleged, V.A.M.S. § 301.010(28) defined a "vehicle" as being "any mechanized device on wheels, designed primarily for use on highways." (The definition has since been changed by amendment.) Certainly the court was correct in holding that these GMC trucks were motor vehicles within the meaning of the statute and subject to its provisions. See Craig v. Rueseler Motor Co., 159 S.W.2d 374 (Mo.App.1942), which involved the transfer of truck titles. In Mackie & Williams Food Stores, Inc. v. Anchor

1. § 301.210, subd. 4, provides:
"It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

Cas. Co., 216 F.2d 317, 320–321 (8th Cir. 1954), this court said:

"Whether he operated the vehicles on the highways of Missouri or did not do so, it was clearly his duty under the Missouri law, as their owner, to apply for and obtain a certificate of ownership and transfer that certificate to Mackie and Williams at the time of sale to the latter. * * *

" * * * There is no escape from the conclusion that under the law of Missouri literal, technical compliance with the requirements of the statute is mandatory and essential to the passing and acquisition of an insurable interest."

The same is true, of course, of an interest which can be mortgaged.

 Plaintiff contends, however, that it had equitable ownership and right to possession of the vehicles. The court held that although it had implied authority to fill in its own name as assignee, since it did not do this but delivered the title certificates in blank there was no valid transfer of title. We agree. The provisions of V.A.M.S. § 301.210 are absolute and mandatory and require the individual seller of a motor vehicle (or trailer) to endorse an assignment of the certificate of title, together with a statement of all liens and encumbrances, to the buyer, and unless such assignment passes between the parties, the purported sale is fraudulent and void, the seller transfers no title and the buyer acquires no interest which can be insured or mortgaged.[2] See Mackie & Williams Food Stores, Inc. v. Anchor Cas. Co., *supra,* and cases therein cited; Commercial Credit Corp. v. Blau, 393 S.W.2d 558 (Mo.App.1965); Moore v. State Farm Mut. Auto Ins. Co., 381 S.W.2d 161 (Mo. App.1964); Bordman Investment Co. v. Peoples Bank of Kansas City, 320 S.W.2d 72 (Mo.App.1959); Craig v. Rueseler Motor Co., *supra.*

 It is settled law in Missouri that recovery in conversion or replevin depends on the strength of plaintiff's own title and not the weakness of defendant's. Mutual Finance Co. v. Goodman Finance Co., 367 S.W.2d 31, 33 (Mo.App. 1963); Pearson v. Allied Finance Co., 366 S.W.2d 6, 8 (Mo.App.1963); Boardman Investment Co. v. Peoples Bank of Kansas City, *supra;* Foulke v. McIntosh, 214 S.W.2d 735, 736 (Mo.App. 1948); Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975 (1947); Personal Finance Co. v. Lewis Investment Co., 138 S.W.2d 655 (Mo.App. 1940). In the *Pearl* case, the court held that lack of acknowledgment of title put defendant on notice of defect and he was not a bona fide purchaser. A chattel mortgagor must have legal title for his mortgage to be a lien on the described property, which Hickman did not have. See Pearson v. Allied Finance Co., *supra;* Pearl v. Interstate Securities Co., *supra.*

 Where a title which an honest buyer gets is good on its face and sufficient to secure a new title upon application to registration authorities as was the case here, it is better than that of holder of lien which was invalid because at the time of the mortgage the titles had not been properly assigned. Commercial Credit Corp. v. Blau, *supra* (393 S.W.2d at 564), and cases there cited. In Seward v. Evrard, 240 Mo.App. 893, 222 S.W.2d 509, 513 (1949), the court said that the true owner of an automobile is estopped from asserting title against a bona fide purchaser without notice of defect in the title where the owner has carelessly placed another in a position where he is clothed with apparent title and sells to an innocent purchaser. To the same effect see Jacobson v. M. B. Thomas Auto Sales, 234 S.W.2d 813, 815–816 (Mo.App.1950). This is exactly the case here. See also Consolidated Underwriters v. Pennsylvania Threshermen &

2. It is not necessary that the car be "owned" or that the insured have an "insurable" interest in order to procure a valid liability policy, however. See State

Farm Mut. Automobile Ins. Co. v. Central Sur. & Ins. Corp., 405 S.W.2d 530 (Mo.App.1966); Kahn v. Lockhart, 392 S.W.2d 30 (Mo.App.1965).

Farmers Mut. Cas. Ins. Co., 324 F.2d 21 (8th Cir. 1963); Pearson v. Allied Finance Co., *supra*; Lebcowitz v. Simms, 300 S.W.2d 827 (Mo.App.1957); Peper v. American Exchange Nat'l Bank in St. Louis, 205 S.W.2d 215 (Mo.App.1947); Craig v. Rueseler Motor Co., *supra*.

With regard to the "good faith" issue, plaintiff cites the case of Wills v. Shepherd, 241 Mo.App. 102, 231 S.W.2d 843 (1950), as supportive of its position, but the facts are not analogous to the facts here. In *Wills*, the court held that where a title certificate in the name of the husband and wife was assigned by the husband only and not acknowledged and the assignee's name was not filled in, the purchaser was put on notice that the title was defective and was not a bona fide purchaser. The court therefore held that since the defects in the title were apparent on its face, the title remained in the sellers and that they were not estopped to assert it against a third person who purchased it with notice of the defect. This was not the case here. Although Hickman was not a bona fide purchaser, the title when assigned to Mack Trucks from Hickman was regular on its face.

In State v. Glenn, 423 S.W.2d 770, 774 (Mo.App.1968), the court held that § 301.210 is a special statute, a police regulation of the highest type with which absolute technical compliance is required, the provisions of which are rigidly enforced and as to which there are no exceptions to conform to intentions, and that the "in-blank" assignment or endorsement was precisely the kind of loose practice the section is designed to prevent. To the same effect see Public Finance Corp. of Kansas City v. Shemwell, 345 S.W.2d 494 (Mo.App.1961), and cases there cited. In the early case of State ex rel. Connecticut Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S.W. 87, 92, 37 A.L.R. 1456 (1924), the court held that the statute was primarily a police regulation and cannot be dispensed with.

██ It is stipulated that Mack Trucks had no actual notice of the lien prior to

May, 1965 when it was notified by Merchants-Produce Bank; yet the Bank contends that it should have been put on notice to inquire by the notation of lien on the reverse side and certain "ambiguities" pertaining to the manner of cancellation, the date thereof, etc. We have examined these contentions and find them to be without merit. The lien was stamped paid and initialed, and Mack Trucks, in addition to the assignment of title from Hickman who was shown thereon as the assignee, also received an affidavit from an officer of Hickman that it was the owner of the trucks. This was sufficient to make Mack Trucks a bona fide purchaser and sufficient under New Mexico law to enable Mack Trucks to secure a new title as owner. As hereinbefore stated, a chattel mortgagor must have legal title for his mortgage to be a lien on described property. Hickman was not an innocent purchaser, did not have legal title, and therefore its mortgage to Western Equipment which was subsequently assigned to the Bank did not constitute a valid lien.

The judgment of the district court is affirmed.