**BANK OF JASPER, a Corporation,
Plaintiff-Respondent,**

v.

**Marion Lee LANGFORD and Nancee J.
Langford, Defendants,**

**Lamar Trust Company, a Corporation,
Intervenor-Appellant.**

No. 9000.

Springfield Court of Appeals,
Missouri.

Oct. 13, 1970.

————◆————

Frieze & Crandall, Carthage, for plaintiff-respondent.

Gordon R. Boyer, Lamar, for intervenor-appellant.

TITUS, Presiding Judge.

The Bank of Jasper commenced this suit by attachment (Rule 85.01 et seq.; § 521.010 et seq.)[1] in the Circuit Court of Jasper County to collect $2,800 due on an unsecured promissory note executed by Marion and Nancee Langford, husband and wife. Lamar Trust Company intervened (Rules 52.11 and 85.50; §§ 507.090 and 521.520) contending it was entitled to possession of the attached 1966 Ford pickup truck by reason of a lien it supposedly held on the vehicle given as partial security for a $6,293 note signed only by Marion Langford. Judgment in favor of the Bank of Jasper was rendered against the Langfords, the pickup was sold on execution and, by agreement, the $2,005 sale proceeds were put in escrow subject to the court's determination of the claims of the trust company and the bank. Lamar Trust Company has appealed from the judgment which awarded the sale proceeds to the Bank of Jasper and the issue presented is whether the Lamar Trust Company had a perfected lien on the truck.

"The method provided in sections 301.600 to 301.670 of perfecting and giving notice of liens or encumbrances [on motor vehicles] * * * is exclusive." Sec. 301.650, subsec. 2. As apropos here, the statutes provide the following:

Sec. 301.600—"1. * * * a lien or encumbrance on a motor vehicle * * * is not valid against subsequent transferees or lienholders * * * who took without knowledge * * * unless the lien or encumbrance is perfected as provided in section 301.600 to 301.670. 2. A lien or encumbrance on a motor vehicle * * * is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery."

Sec. 301.620—"If an owner creates a lien or encumbrance on a motor vehicle * * * : (1) The owner shall immediately execute the application, in the space provided therefor on the certificate of ownership[2] or on a separate form the director of revenue prescribes, to name the lienholder on the certificate, showing the name and address of the lienholder and the date of his security agreement, and cause the certificate, application and the required fee to be delivered to the lienholder; (2) The lienholder shall immediately cause the certificate, application and the required fee to be mailed or delivered to the director of revenue; * * * (4) Upon receipt of the certificate of ownership, application and the required fee, the director of revenue shall either indorse on the certificate or issue a new certificate containing the name and address of the new lienholder, and mail

1. References to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and to RSMo 1969, V.A.M.S.

2. No such space was provided on the original certificate of ownership that had been issued on the 1966 Ford pickup truck.

the certificate to the first lienholder named in it."

The facts in this court-tried action were stipulated and may best be understood by recounting them chronologically. *July 13, 1966*—Marion and Nancee Langford made and delivered to the Bank of Jasper their unsecured $3,000 promissory note. *September 14, 1966*—Marion Langford purchased the Ford pickup in question. *September 28, 1966*—The director of revenue issued a certificate of title (ownership) to the truck designating "Dr. Marion L. &/or Nancee Langford" as the owners; no lien or encumbrance appeared on the certificate. *September 29, 1966*—Marion Langford executed and delivered to the Lamar Trust Company (1) his $6,293 promissory note and (2) a director of revenue form (§ 301.-190) labeled "Application for Missouri Title and/or License," whereby he made application that a certificate of title to the Ford pickup be issued in his name showing that the truck was subject to a first lien held by the Lamar Trust Company.[3] Within three days thereafter the application was sent to the director of revenue, but was returned because it had not been accompanied by the original certificate of title to the pickup. *November 1, 1966*—Marion and Nancee Langford executed in blank (i. e., no assignee) the "Assignment of Title" form on the back of the certificate of title which had been issued in their names on September 28, 1966; this form was also signed by a notary public. The certificate of title thus assigned in blank, together with the "Application for Missouri Title and/or License" dated September 29, 1966, supra, and the certificate of ownership fee (§§ 301.190 and 301.210) were forwarded to the director of revenue only to be returned with a request for an affidavit that no consideration had been paid for the transfer of title to evidence that no sales tax was due on the transaction. § 144.070. The affidavit was never submitted because the Langfords absconded from their Missouri

abode on or about November 10, 1966. *November 14, 1966*—The Bank of Jasper filed this suit, and the attachment writ was executed by attaching the 1966 Ford pickup truck.

Whenever a motor vehicle is acquired in a transaction subject to the Missouri sales tax law, the owner, when making application for a certificate of title, is required by § 144.070 to present to the director of revenue satisfactory evidence "showing the purchase price paid by or charged to the applicant in the acquisition of said motor vehicle * * * or that no sales tax was incurred in its acquisition, * * * and the director of revenue shall not issue a certificate of title * * * until the tax [if any] levied for the sale * * * has been paid." It was because of the failure to comply with this statute that the original certificate of title to the Ford, the "Application for Missouri Title and/or License," and the certificate of ownership fee were returned to the Lamar Trust Company after having been forwarded to the director on November 1, 1966. Lamar Trust Company argues that since the burden was on Marion Langford to discharge the requirements of § 144.070, the mere fact no sales tax was paid or that the director of revenue was not provided with evidence that no tax had been incurred, would not prevent the perfection of its lien on the pickup ahead of that acquired by the Bank of Jasper via the writ of attachment. § 400.9–301(3). To this point Lamar Trust Company cites Zuke v. Mercantile Trust Company National Association, 8 Cir., 385 F.2d 775, and we agree the citation is authority for the proposition urged. Nevertheless, the circumstances peculiar to this instant case render Zuke less than totally decisive.

▉ When Marion Langford commenced his individual dealings with the Lamar Trust Company the director of revenue, pursuant to an application therefor, had already issued a certificate of owner-

---

3. For a description of this form and the manner in which it is used, see In re Jackson, E.D.Mo., 268 F.Supp. 434, 442–443.

ship (title) to the Ford pickup truck in the names of persons who were husband and wife. By reason of this and the provisions of § 301.195, it "is presumed" that an estate by the entirety was created in Marion and Nancee Langford in the motor vehicle. Consequently, any act affecting title to the pickup had to be the joint act of the Langfords [Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Mo. (banc), 396 S.W.2d 570, 580(20)], Marion could not bind Nancee by his individual contract [Freeman Contracting Company v. Lefferdink, Mo. App., 419 S.W.2d 266, 273(5)],Nancee's interest in the truck could not be transferred or pledged by Marion alone [Wills v. Shepherd, 241 Mo.App. 102, 110–111(3), 231 S.W.2d 843, 848(3)], and neither spouse had any title or interest in the truck which could be encumbered by the sole act of either. Stewart v. Shelton, 356 Mo. 258, 265, 201 S.W.2d 395, 398. Therefore, before Marion, acting alone, could effectively hypothecate the Ford as collateral for his obligation to the Lamar Trust Company, *it was necessary that ownership to the vehicle be transferred to him individually.*

■ In the event of a transfer of ownership of a used motor vehicle, i. e., one for which a certificate of ownership has been issued, § 301.210 specifies that "the holder of such certificate shall indorse on the same an assignment thereof, * * * in form printed thereon, and prescribed by the director of revenue, * * *· and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer." The statute further states that "[i]t shall be unlawful for any person to buy or sell" a used motor vehicle in Missouri "unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle * * *, without the assignment of such certificate of ownership, shall be fraudulent and void." The requirements of this statute have received strict judicial enforcement [Galemore v. Mid-West National Fire & Cas.

Ins. Co., Mo.App., 443 S.W.2d 194, 197], and it has been repeatedly announced that even though accompanied by full payment and physical delivery of possession, the attempted transfer of ownership to a used motor vehicle is fraudulent and void and passes no title whatever unless, as a reasonable contemporaneous part of the transaction, the previously issued certificate is properly assigned and acknowledged by the transferor and delivered to the transferee. Greer v. Zurich Insurance Company, Mo., 441 S.W.2d 15, 25(5); McIntosh v. White, Mo.App., 447 S.W.2d 75, 80(13); Kahn v. Lockhart, Mo.App., 392 S.W.2d 30, 34(4); Allstate Insurance Co. v. Hartford Accident & Ind. Co., Mo.App., 311 S.W.2d 41, 46(3).

■ Because of the lack of an assignment, Marion Langford did not have individual legal title to the Ford at the time he undertook to pledge it to the Lamar Trust Company. A chattel mortgagor must have legal title for his mortgage to be a lien on the described property [Merchants-Produce Bank v. Mack Trucks, Inc., 8 Cir., 411 F.2d 1174, 1177(5); Pearl v. Interstate Securities Co., 357 Mo. (banc) 160, 166(6), 206 S.W.2d 975, 979(16)]; therefore, the encumbrance relied upon by the Lamar Trust Company was not a valid lien. Universal C.I.T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814, 817(4). The title certificate Marion Langford delivered to the Lamar Trust Company [§ 301.620 (1)] was defective on its face because it showed no assignee or title in Marion which he could then mortgage. Such should have put the Lamar Trust Company on inquiry so that it could take the proper steps to have the title properly assigned to Marion. "This [it] did not do, and it follows that no legal lien would be secured to" the trust company and that it did not perfect its lien on the Ford pickup truck. Commercial Credit Corporation v. Blau, Mo., 393 S.W. 2d 558, 563–564(3–4).

■ To comply with § 301.210, the assignee of a used motor vehicle who is not a registered dealer, must present the origi-

nal title certificate properly assigned to the director of revenue with his application for registration and obtain a new certificate of ownership in his own name. Pearl v. Interstate Securities Co., supra, 206 S.W.2d at 978. The director of revenue is enjoined by § 301.190 not to issue a certificate of ownership to a motor vehicle "unless the applicant therefor shall make application for * * * a certificate of ownership" and the director is "satisfied that the applicant is the lawful owner of such motor vehicle." Although the director of revenue returned Marion Langford's application and the original certificate of title to the Lamar Trust Company for the stated reason that the provisions of the sales tax law (§ 144.-070) had not been met, this does not prompt us to presuppose that if the director had been provided with the requested affidavit he would have issued a certificate of ownership to Marion Langford contrary to the directions of § 301.190; neither does this change the fact that Marion Langford had no title to the vehicle which he alone could pledge or encumber to the Lamar Trust Company, because the title to the Ford had not been properly assigned to him either at the time of the security agreement or thereafter.

The judgment is affirmed.

STONE and HOGAN, JJ., concur.