In re **Ralph Dale CREWSE f/d/b/a Dale Crewse Auto Sales, Bankrupt.**

**Jack N. BOHM, Trustee, Plaintiff,**

v.

**FARMERS SAVINGS BANK, Defendant.**

**Bankruptcy No. 79–00931–BW–2.**

United States Bankruptcy Court,
W. D. Missouri, W. D.

July 31, 1980.

**392**

Darold W. Jenkins, Independence, Mo., for defendant.

Jack N. Bohm, Kansas City, Mo., Trustee.

## MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Chief Judge.

This is an action brought by the trustee against the defendant, Farmers Savings Bank, to account to the trustee for all proceeds from the sale of the bankrupt's inventory and to turn over this amount to the trustee for the benefit of general creditors.

The bankrupt, Dale Crewse, formerly doing business as "Dale Crewse Auto Sales", was a used-car dealer in Marshall, Missouri. The defendant, Farmers Savings Bank, loaned the bankrupt money to buy and/or trade automobiles.

When the bankrupt bought or traded an automobile with funds received from the bank, he would deliver the certificate of title to the automobile, endorsed by the seller, but the name of the buyer (or assignee) was left blank. The bank thus held possession of the certificate of title and the bankrupt held possession of the vehicle.

When the bankrupt sold a vehicle, he would take the money and/or other certificate of title he received to the bank; at which point the bank would give him the title to the vehicle, still only endorsed by the previous seller and assigned in blank, and the bankrupt would then fill in the name of the buyer in the assignee space and give the title to the buyer.

For each vehicle held in inventory by the bankrupt, the bank held a properly executed document entitled "Combined Note and Security Agreement with Power of Sale", to which the certificate of title of the vehicle described was attached.

The bank did not file a financing statement for each certificate of title it held, nor did the bank title the vehicles in its own name. The only time the bank was ever shown as a lienor on the certificate of title was when it would finance the buyer of the vehicle from the bankrupt. The bank financed the bankrupt's operation in the foregoing manner from April, 1978 until it filed its voluntary petition in bankruptcy on August 1, 1979. Further, there was no written floor plan type of agreement.

At the time of the bankruptcy, the bank had in its possession certificates of title to four (4) vehicles; a 1978 Dodge Van, a 1978 Ford Truck, a 1977 Ford LTD, and a 1974 Dodge Van. Following the bankruptcy filing, a certificate of title to a 1974 Dodge Dart was delivered to the bank.

The plaintiff and the defendant, to avoid asset depreciation, entered into an agreement whereby the bank disposed of the vehicles and placed the proceeds in escrow until this Court determined who they belonged to. The bank disposed of all five (5) vehicles for a gross sum of $9,176.72, with disposal expenses amounting to $370.99, leaving a balance of $8,805.73 in a special escrow account.

The issue before the Court is, as between the Farmers Savings Bank and the trustee of the bankruptcy estate of Ralph Dale Crewse, who is entitled to the proceeds, currently held in escrow, of the sale of the automobiles in Crewse's possession.

By the express provisions of section 301.-210 RSMo. 1969, no title passes to the purchaser of a used automobile in Missouri, unless the seller's certificate of title, properly endorsed and acknowledged before a notary public, is transferred to the purchaser at the time of the delivery of the vehicle. The statute further declares that the sale of a used motor vehicle without assignment of the certificate to be unlawful, fraudulent and void. Section 301.210 RSMo. 1969 stated in pertinent part:

"(1) In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. (2) It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void."

Farmers Savings Bank contends that it was the lawful owner of the five motor vehicles and held the properly assigned certificates of title to said motor vehicles. As to this contention the case law in Missouri does not agree.

Section 301.210 is an express statutory requirement. The position of the Missouri Supreme Court is that there is no such thing as "substantial compliance" with this title law—either the provisions are complied with or they are not.

"There is no escape from the conclusion that under the law of Missouri, literal, technical compliance with the requirements of the statute is mandatory and essential . . . "*Mackie & Williams Food Stores v. Anchor Casualty Co.*, 216 F.2d 317, 321 (C.A. 8th 1954). See also *Public Finance Corp. v. Shemwell*, 345 S.W.2d 494 (Mo.App.1961); *Personal Finance Co. of Missouri v. Lewis Inv. Co.*, 138 S.W.2d 655 (Mo.App.1940); and *Universal Credit Co. v. Story*, 128 S.W.2d 654 (Mo.App.1939).

". . . statutory provisions as to the assignment of the certificate of title to a motor vehicle upon the sale or transfer of the vehicle are viewed as absolute and mandatory and are rigidly enforced by the courts, and title does not pass without adherence to such provisions." *Kelso v. Kelso*, 306 S.W.2d 534 (Mo.1957).

"Absolute technical compliance with statute relating to transfer of title is required otherwise the sale is fraudulent and void." *Horton v. State Farm Fire & Casualty Co.*, 550 S.W.2d 806 (Mo.App. 1977). See also, *Greer v. Zurich, Inc.*, 441 S.W.2d 15 (Mo.1969).

The provisions of the Missouri Motor Vehicle Act are essentially a police regulation of the highest type, in the enactment of which the public welfare was primarily concerned. *State ex rel. Conn. Fire Ins. Co. of Hartford, Conn. v. Cox*, 306 Mo. 537, 268 S.W. 87 (1924). "Our legislature in its wisdom, has placed the sales of used automobiles in a class of its own, with different requirements from those concerning the sales of other chattels. The courts, and the public alike, must recognize and be bound by the action of the legislature, and its effect on the rights of sellers, purchasers, and mortgagers of such automobiles. "*Bordman Invest. Co. v. Peoples Bank of Kansas City*, 320 S.W.2d 72, 79 (Mo.App. 1958)."

In the case before the Court, the sellers of the automobiles, delivered possession of the vehicles and their respective title certificates, endorsed in blank to the dealer, Crewse. Crewse, in turn, without filling in the assignee blank, and obtaining the seller's acknowledgment of such, executed a "combined Note and Security Agreement with Power of Sale" with the Farmers Savings Bank, who had lent him the money to purchase the vehicles, and he turned the titles assigned in blank over to the bank. When Crewse sold the automobiles he would take the money he received to the bank, and the bank would give him the title to the vehicle(s) still assigned "in blank". Crewse would then fill in the name of the buyer in the assignee space and give such certificate of title to the buyer.

A keystone in Missouri case law on the general subject of titles to used automobiles and of importance to the case at bar is *Pearl v. Interstate Sec. Co.*, 357 Mo. 160, 206 S.W.2d 975 (1947). Pearl, a used car dealer, purchased two automobiles, accepting certificates of title which were signed but unacknowledged and with a blank assignee space. He sold these cars to Security Motor Co., delivering the certificates to Security as he had received them and accepting a check which proved valueless. Security mortgaged the automobiles to Interstate Sec. Co. and almost at once went into receivership.

The court decided that Pearl had lawful possession of the automobiles and the certificates of title because the original owners intended for him to have them. This gave him the right to complete the transaction by filling in his name as assignee and obtaining the seller's acknowledgment. The court reasoned that the statutory provision—that a certificate with a complete assignment thereon should pass "at the time" of the delivery of the vehicle—should not be strictly construed, since a qualified notary might not always be immediately available. A reasonable time should be allowed for the parties to complete the transaction in compliance with the statute by having a notary take the seller's acknowledgment. The court held, however, that as Pearl did not have the certificates properly filled in and acknowledged so that he could reassign them to Security, Security never received any title to the cars, and thus it could not validly execute a mortgage to Interstate.

The court also held that it would not give Pearl, or anyone else the right to fill in the name of Security as assignee from the holders because he was a buyer. To do so would be a misdemeanor. Citing *Personal Finance Co. of Mo. v. Lewis Invest. Co.*, 138 S.W.2d 655 (Mo.App.1940) (which held that not only is the sale void, but under the statute's terms both the seller and the purchaser are guilty of the commission of a misdemeanor).

Most important for our purposes, was the court deciding that Interstate could not establish itself as a bona fide purchaser of the automobile through its foreclosure on default of payment by Security. The defects in Security's title were apparent on the back of the certificate held by Interstate (i. e., lack of assignee and acknowledgment by the seller), the court saying:

"These defects at least were sufficient to put defendant (Interstate) upon inquiry to ascertain the true facts, and the true facts would have shown that Security had nothing to mortgage." 206 S.W.2d at 979.

The court continued:

"There is no requirement . . . as to transfer of title certificates in connection with mortgages on automobiles. However, a mortgagor must have legal title for his mortgage to be a lien on described property." See also, *Pearson v. Allied Finance Co.*, 366 S.W.2d 6, 8 (Mo.App. 1963), *Personal Finance Co. of Missouri v. Lewis Investment Co.*, 138 S.W.2d 655 (Mo.App.1940). "We held in *State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox*, 306 Mo. 537, 268 S.W. 87 (1924) that a purchaser, who obtained no assignment of a certificate of title, had no insurable interest in the automobile. It therefore, follows that he would have no mortgagable interest. What was required to vest title in Security, even if it had paid the check for the purchase price, was both a completion of the assignments so as to vest title in the plaintiff and an execution and acknowledgment of the dealers reassignment on the certificates by him to Security. Since this was never done, Security never got any title it could mortgage; and could not give defendant any lien on these cars. Therefore, defendant's mortgagor could get nothing by its foreclosure."

The most recent case on this issue is *Merchants-Produce Bank v. Mack Trucks, Inc.* 411 F.2d 1174 (C.A.8 1969) an extremely similar case.

This was an action by the bank against the purchaser of four GMC Trucks subject to the lien of a certain recorded chattel mortgage held by the bank.

Kansas certificates of title on three of the trucks were issued to a construction company. The company went bankrupt and pursuant to a turnover order of the bankruptcy court, the bank received possession of these three vehicles and a fourth truck (not titled at the time) by reason of a chattel mortgage against said equipment which was then in default. The company furnished the bank the certificates of title, assigned in blank. The bank procured a certificate of title on the fourth truck, also endorsed in blank.

The bank never filled in its name as assignee, in the blank spaces on these title certificates. A bank officer testified that the reason this was not done was to avoid the necessity of registering them, obtaining Missouri certificates of title, and paying license fees and sales tax on them.

The trucks were thereafter sold to a leasing company, and the title certificates were delivered to the leasing company in blank, only noting a lien in its favor on the reverse side. The leasing company in turn, sold the trucks to Hickman Plaza, also delivering the titles in blank. Hickman filled in its name as buyer, and gave a mortgage to the leasing company, who, in turn, assigned it to the bank. Hickman traded the four trucks on two new trucks which it purchased from the defendant Mack Trucks, and delivered the four certificates of title to the defendant, all of which showed Hickman as the purchaser on the assignment of title. Mack Trucks then presented these titles to New Mexico licensing officials and obtained new certificates of title.

The court held that since the Missouri statute relating to the transfer of title to motor vehicles, V.A.M.S. section 301.210, subd. 4, was not complied with by the plaintiff, or those through whom it claimed title, the sales between those two parties were fraudulent and void ab initio under Missouri law and that the "title" to the trucks was not transferred through the parties so as to vest in Hickman any interest in the trucks which it could mortgage.

The Court of Appeals at p. 1177 stated: "The provisions of V.A.M.S. § 301.210 are absolute and mandatory and require the individual seller of a motor vehicle to endorse an assignment of the certificate of title, together with a statement of all liens and encumbrances, to the buyer, and unless such assignment passes between the parties, such purported sale is fraudulent and void, the seller transfers no title, and the buyer acquires no interest which can be insured or mortgaged."

Citing *Mackie & Williams Food Stores, Inc. v. Anchor Casualty Co.* (supra); *Commercial Credit Corp. v. Blau*, 393 S.W.2d 558 (Mo.1965); *Moore v. State Farm Mut. Auto. Ins. Co.*, 381 S.W.2d 161 (Mo.App.1964); *Bordman Invest. Co. v. Peoples Bank of Kansas City* (supra); and *Craig v. Rueseler Motor Co.*, 159 S.W.2d 374 (Mo.App.1942). "A chattel mortgagor must have legal title for his mortgage to be a lien on the described property, which Hickman did not have." Citing *Pearson v. Allied Finance Co.*, 366 S.W.2d 6, 8 (Mo.App.1963); and *Pearl v. Interstate Securities Co.*, (supra).

From the above stated facts, Farmers Savings Bank did not have a properly assigned certificate of title. Since Crewse gave the bank the title "assigned in blank", they acquired no legal title for their mortgage to be a lien on the property. Therefore, defendant is not entitled to the proceeds of the sale.

Counsel for Farmers Savings Bank suggests that the case of *Albright v. Uhlig*, 315 S.W.2d 471 (Mo.App.1958) is authoritative. The Court disagrees.

This was an action for replevin to recover a vehicle and damages. Albright, placed his automobile on a dealer's lot. Albright retained the title certificate and did not authorize the dealer to sell the automobile or receive money for it, without the assignment of the certificate of ownership. Although it was the plaintiff's intention to sell the car to the dealer company, it was understood that the used car dealer could sell the vehicle and pay him $800.00 from the proceeds; or the company itself could pay him $800.00 and then sell the vehicle,

whereupon plaintiff would transfer his certificate of ownership, duly assigned to the company.

The dealer made a purported sale to Uhlig, who paid the agreed price of $1,295.00, trading in an older car and $945.00 cash. The dealer forwarded a sight draft to Albright in payment for the car. He deposited the sight draft in his bank, attaching thereto the certificate of ownership, duly assigned to the dealer. The draft was returned protested, and the assigned title certificate was returned as well. The assigned certificate of ownership was never delivered by the plaintiff to the defendant. Upon learning Uhlig's identity, nearly one year later (the dealer would not say who owned the car) the plaintiff brought a replevin action.

The St. Louis Court of Appeals held that the plaintiff had right to possession as against the defendant who received the automobile from the dealer in return for payment, without the assignment of the certificate of ownership.

"Purchaser Uhlig would not have lost his money had he observed the requirements of Section 301.210(4) RsMo. 1969 . ." at 474–75.

■ This case stands for the principle that where the seller does not properly assign his certificate and deliver it to the purchaser along with the automobile, the purchaser cannot validly sell the automobile to a third party or execute a valid mortgage on the vehicle since he has acquired no title.

The case might well be applicable to the bank's cause had it a properly assigned certificate of title. But the cases of *Pearl v. Interstate Sec. Co.* (supra) and *Merchants-Produce Bank v. Mack Trucks,* (supra) show that the bank did not follow proper statutory procedure, and thus, as between the trustee and themselves, are not entitled to the sales proceeds. We are not confronted with the potential rights of other parties. (It is quite possible that the transactions between Crewse and the purchasers at sale, were invalid transfers as well under Section 301.-210).

The Missouri courts have recognized that the application of the foregoing rule some-times works hardships. In the case of *Robertson v. Snider,* 63 S.W.2d 508, 509 (Mo. App.1933) the court said:

"There are many instances where it has and will continue to work a hardship upon innocent dealers and sellers of such vehicles. But under the law as written there can be no exceptions in favor of those not intentionally guilty of wrongdoing."

It should be noted by the court that although the defendant pled a defense of an oral bailment contract between the dealer Crewse and itself, we do not find a need to address this issue, as the defendant states (Suggestions In Opposition to Trustee's Complaint, p. 5) that it "does not rely upon that point."

The Court finds that even if the certificates of title had been properly assigned (which they were not) that the bank's security interest was unperfected on the date the petition in bankruptcy was filed and thus subordinate to the trustee, who as a lien creditor would have priority over an unperfected security interest.

Counsel for Farmers Savings Bank suggests that where a chattel is a used motor vehicle, possession of a properly assigned certificate of title thereto, for value, obviates the necessity of perfecting a security lien pursuant to the provisions of Missouri's Uniform Commercial Code. But counsel presents no statutory support for this argument.

It is thus necessary to examine both the Code and the underlying certificate of title law to determine the appropriate method of perfecting a security interest in this case.

The facts indicate that Crewse was a used car dealer, therefore, the vehicles he sold would be classified as inventory, V.A. M.S. Section 400.9–109(4).

V.A.M.S. Section 301.600 enumerates the exclusive method of perfecting a lien on motor vehicles purchased by the buyer on credit. It provides that by posting a lien on the certificate of title and delivering such to the director of revenue, perfects the se-

curity interest if delivery is completed within thirty (30) days after its creation. However, V.A.M.S. Section 301.650 expressly says that Section 301.600 does not apply to: ". . . (3) A lien or encumbrance on a motor vehicle . . . created by a manufacturer or dealer who hold the vehicle . . . for sale."

Since no applicable Missouri statutory certificate of title law covers the perfection of an automobile dealer's inventory, we must examine the Uniform Commercial Code.

Section 400.9–302 states:

(1) A financing statement must be filed to perfect all security interests except the following: (a)–(f) . . .

(3) "The filing provisions of this article do not apply to a security interest in property subject to a statute—

(b) of this state which provides for central filing of security interests in property, or in a motor vehicle *which is not inventory held for sale* for which a certificate of title is required under the statute of this state if a notation of such security interest can be indicated by a public official on a certificate or a duplicate thereof." (emphasis ours)

It is the Court's conclusion that in Missouri, in order to perfect a security interest in a used car dealer's inventory, a financing statement must be filed. This the defendant did not do.

The Court understands full well that the bank probably paid valuable consideration for the vehicles in question. But unfortunately, the failure of the bank to; (1) see that proper assignment of the title certificates was accomplished, and (2) that steps were taken to properly perfect its security interest pursuant to the Uniform Commercial Code, defeats its rights to the vehicles or proceeds therefrom as against the trustee.

Therefore, the trustee is entitled to the net yield from the sale, in the amount of $8,805.73, plus any accrued interest.